|  |  |
|---|---|
| UNITED STATES OF AMERICA, <br><br>     v. <br><br> MOSSIMO GIANNULLI and LORI LOUGHLIN, <br><br>        Defendants. | Case No. 19-cr-10080 |

**DEFENDANTS MOSSIMO GIANNULLI AND LORI LOUGHLIN'S RESPONSE
TO THE GOVERNMENT'S MOTION FOR HEARING REGARDING
<u>CONFLICTS OF INTEREST</u>**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................1

BACKGROUND ........................................................................................................2

ARGUMENT ............................................................................................................6

I. THE SIXTH AMENDMENT RIGHT TO COUNSEL OF CHOICE IS A FUNDAMENTAL CONSTITUTIONAL RIGHT THAT CANNOT BE OVERRIDDEN EXCEPT IN EXTRAORDINARY CIRCUMSTANCES ............6

II. LATHAM'S CONCURRENT REPRESENTATION OF GIANNULLI AND LOUGHLIN POSES NO CURRENT OR FORESEEABLE CONFLICT ........................................................................................................9

III. LATHAM'S REPRESENTATION OF USC IN AN UNRELATED REAL-ESTATE MATTER POSES NO CURRENT OR FORESEEABLE CONFLICT ......................................................................................................12

    A. Latham Has Taken Appropriate Measures To Screen Off Its Work For Giannulli And Loughlin From Its Work For USC ............................13

    B. Latham Will Not Become Adverse To USC In This Proceeding ..............14

    C. The Government Is Wrong To Argue That Using Co-Counsel Would Prejudice Giannulli And Loughlin And Undermine Their Defense .........................................................................................................17

CONCLUSION ..........................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Arizona v. Fulminante,*
499 U.S. 279 (1991)...................................................................................................7

*Bryan Corp. v. Abrano,*
52 N.E.3d 95 (Mass. 2016) ........................................................................................8

*Burger v. Kemp,*
483 U.S. 776 (1987).................................................................................................10

*Cuyler v. Sullivan,*
446 U.S. 335 (1980).................................................................................................10

*Gideon v. Wainwright,*
372 U.S. 335 (1963)...................................................................................................6

*In re Grand Jury Proceedings,*
859 F.2d 1021 (1st Cir. 1988).....................................................................................7

*Holloway v. Arkansas,*
435 U.S. 475 (1978)...................................................................................................9

*Johnson v. Zerbst,*
304 U.S. 458 (1938)...................................................................................................6

*Kaley v. United States,*
571 U.S. 320 (2014)...................................................................................................6

*Luis v. United States,*
136 S. Ct. 1083 (2016)...............................................................................................6

*Maling v. Finnegan, Henderson, Farabow, Garrett & Dunner, LLP,*
42 N.E.3d 199 (Mass. 2015) ......................................................................8, 14, 16

*Sumitomo Corp. v. J.P. Morgan & Co.,*
No. 99-cv-4004, 2000 WL 145747 (S.D.N.Y. Feb. 8, 2000) .................................15

*Swanson v. Wabash, Inc.,*
585 F. Supp. 1094 (N.D. Ill. 1984) .........................................................................15

*Sykes v. Matter,*
316 F. Supp. 2d 630 (M.D. Tenn. 2004)..................................................................15

*United States v. Burgos-Chaparro*,
    309 F.3d 50 (1st Cir. 2002)..................................................................11

*United States v. Burns*,
    526 F.3d 852 (5th Cir. 2008) .............................................................15

*United States v. Cardona-Vicenty*,
    842 F.3d 766 (1st Cir. 2016).......................................................9, 11, 20

*United States v. Diozzi*,
    807 F.2d 10 (1st Cir. 1986)....................................................................7

*United States v. Driscoll*,
    No. 94-cr-10153, 1994 WL 549504 (D. Mass. Oct. 4, 1994)................20

*United States v. Foster*,
    469 F.2d 1 (1st Cir. 1972)............................................................6, 9, 20

*United States v. Gonzalez-Lopez*,
    548 U.S. 140 (2006)...........................................................................6, 7

*United States v. Hernandez-Lebron*,
    23 F.3d 600 (1st Cir. 1994)....................................................................9

*United States v. Jeffers*,
    520 F.2d 1256 (7th Cir. 1975) .............................................................15

*United States v. Lorenzana-Cordon*,
    125 F. Supp. 3d 129 (D.D.C. 2015)................................................15, 19

*United States v. Martorano*,
    620 F.2d 912 (1st Cir. 1980).................................................................10

*United States v. Medel*,
    592 F.2d 1305 (5th Cir. 1979) ..............................................................10

*United States v. Melo*,
    702 F. Supp. 939 (D. Mass. 1988) ....................................................7, 20

*United States v. Robinson*,
    753 F.3d 31 (1st Cir. 2014)....................................................................7

*United States v. Santiago-Lugo*,
    167 F.3d 81 (1st Cir. 1999)...................................................................10

*In re Wagar*,
    No. 06-mc-127, 2006 WL 3699544 (N.D.N.Y. Dec. 13, 2006) ............15

*Wal-Mart Stores, Inc. v. Vidalakis*,
No. 07-cv-0039, 2007 WL 4468688 (W.D. Ark. Dec. 17, 2007) ...........................................15

*Wheat v. United States*,
486 U.S. 153 (1988) ...............................................................................................................7

## RULES

Local Rule 83.6.1(a) .................................................................................................................7

Massachusetts Rule of Professional Conduct 1.7 ...............................................................8, 9, 14

## REGULATIONS

ABA Standing Comm. on Ethics & Prof'l Responsibility, Formal Op. 05-434
(2004) .................................................................................................................................8, 16

ABA Standing Comm. on Ethics & Prof'l Responsibility, Formal Op. 92-367
(1992) ...............................................................................................................................15, 16

## CONSTITUTIONAL PROVISIONS

U.S. Constitution amendment VI .............................................................................................6

## OTHER AUTHORITIES

Ronald D. Rotunda, *Resolving Client Conflicts by Hiring "Conflicts Counsel"*,
62 Hastings L.J. 677 (2011) ...................................................................................................15

# INTRODUCTION

The Government has asked this Court to conduct a hearing under *United States v. Foster*, 469 F.2d 1 (1st Cir. 1972), and Federal Rule of Criminal Procedure 44(c) to inquire about supposed conflicts of interest involving Defendants Mossimo Giannulli and Lori Loughlin's chosen counsel, Latham & Watkins LLP. Giannulli and Loughlin agree that this Court should schedule such a hearing so that they can apprise the Court of their informed consent to the Latham representation. But the Government is wrong to suggest that any conflict exists. The Sixth Amendment affords Giannulli and Loughlin the right to the counsel of their choice, and that fundamental constitutional right cannot be overridden except in extraordinary circumstances. No such circumstances are present here.

According to the Government, Latham's joint representation of Giannulli and Loughlin poses a potential conflict of interest, and Latham's representation of USC in an unrelated real-estate dispute poses an actual conflict. Giannulli and Loughlin fully understand the potential risks of their joint representation by Latham, but they have given their informed consent to Latham's joint representation. Moreover, Giannulli and Loughlin have each obtained separate counsel—experienced and respected criminal-defense practitioners—who will work alongside Latham and be involved in all substantive aspects of their defense. So there is no joint-representation issue.

Nor does USC's representation by a different Latham team in an entirely unrelated real-estate dispute pose any conflict. Latham has taken appropriate measures to screen off its work for Giannulli and Loughlin from its work for USC, and it will recuse itself from any portion of this case that would require direct adversity with USC—including any cross-examination of USC witnesses or participation in any restitution proceedings that might arise in the event either of Latham's clients is found guilty. Indeed, Latham informed Giannulli and Loughlin that they should retain co-counsel to handle those matters, and both defendants have consented to this

arrangement in writing. Moreover, Giannulli and Loughlin's robust defense team—made up of several firms working in tandem—will ensure that Giannulli and Loughlin are at all times represented by counsel who will defend them competently and diligently, through every aspect of this case. So there is no potential for any prejudice to Giannulli and Loughlin's defense.

## BACKGROUND

Mossimo Giannulli has been a client of Latham & Watkins for more than two decades. *See* Decl. of Perry J. Viscounty ¶ 2, attached as Ex. A. During that time, Giannulli has trusted Latham to represent him in a variety of matters, including business transactions, intellectual-property matters, and litigation. *Id.* So when Giannulli and his wife, Lori Loughlin, learned that they faced federal criminal charges, they naturally turned to Latham—counsel they knew and trusted—to help them clear their names.

In March 2019, Giannulli and Loughlin contacted Latham to discuss engaging the firm for their defense in this case. *Id.* ¶ 3. Latham ran an internal conflicts check for its representation of Giannulli and Loughlin in this case. *Id.* ¶¶ 3-4. The conflicts check indicated that Latham is representing USC—an alleged victim—in a real-estate dispute with the Los Angeles Memorial Coliseum Commission and performing work related to that dispute. *See id.* ¶¶ 4-5. That matter is being handled by attorneys in Latham's Environmental, Land and Resources, Finance, and Corporate practices, and the attorneys on the matter are based in Los Angeles and San Francisco. *Id.* ¶ 5. And that matter has nothing to do with USC's admissions process or the criminal allegations in this case. *Id.* That dispute is also the only matter in which Latham currently represents USC. *Id.* ¶ 6.

In undertaking the representation of Giannulli and Loughlin, the firm considered the implications of Latham's representation of USC. After considering the governing ethical rules, and because USC is not a party to the criminal matter and the real-estate dispute is unrelated to

this case, Latham concluded that the representations did not present any current or foreseeable conflict. *See id.* ¶ 8. Latham further concluded, however, that it would be obligated to avoid any direct adversity with USC in the course of the representation. *Id.* ¶ 7. Latham determined that it could adequately address this latter concern by (1) implementing appropriate screening measures; (2) obtaining waivers from Giannulli and Loughlin; (3) recusing itself from any proceedings in the case that would require Latham to act directly adverse to USC or its employees; and (4) ensuring that Giannulli and Laughlin's respective defense teams include experienced non-Latham counsel who could handle any such proceedings, should they arise. *Id.* ¶¶ 7-9.

In various meetings with Giannulli and Loughlin, Latham detailed for them both the risks inherent in joint representation and the limitations that Latham's representation of USC could potentially impose. *Id.* ¶ 11. Latham explained to Giannulli and Loughlin that it is conceivable that their respective interests in the case could become adverse, and that this would require Latham's withdrawal. *Id.* ¶ 14. Latham also explained to them that joint representation could result in divided—or at least shared—attorney-client loyalties. *Id.* ¶ 12. And Latham told Giannulli and Loughlin that Latham could not and would not advise or represent either of them adversely to the other, on any issues. *Id.* ¶ 13. Latham informed them that their communications with Latham would not be privileged as to each other, *id.*, and that they had the right to retain independent counsel—both in the case generally and with respect to their decision whether to be jointly represented—and encouraged them to do so, *id.* ¶ 16. Giannulli and Loughlin each stated that they understood the risks, and that they still wanted Latham as their counsel. *Id.* ¶¶ 18-20. On March 15, 2019, each of them executed an engagement formalizing this understanding and their relationship with Latham in this matter. *See id.* ¶ 21; Decl. of Mossimo Giannulli ¶¶ 3-15, attached as Ex. B; Decl. of Lori Loughlin ¶¶ 3-15, attached as Ex. C.

Latham also told Giannulli and Loughlin that, because USC is a Latham client, Latham cannot be adverse to USC. Ex. A ¶ 17. Latham explained that this means it cannot examine (or participate in preparation for examining) USC witnesses, and that—to the extent any issue arises that requires acting adverse to USC—such issues will have to be handled by other counsel. *Id.* ¶ 17; Ex. B ¶ 13; Ex. C ¶ 13. Latham told Giannulli and Loughlin that they should retain independent counsel for that purpose, and that Latham would work in tandem with co-counsel to represent them. Ex. A ¶ 17; Ex. B ¶ 13; Ex. C ¶ 13. Giannulli and Loughlin stated that they understood this limitation on Latham's representation—and still wanted Latham to represent them. Ex. A ¶¶ 19-20; Ex. B ¶ 15; Ex. C ¶ 15. They also executed a separate written waiver confirming that consent. Ex. A ¶ 22; Ex. B ¶ 16; Ex. C ¶ 16.

Latham also implemented robust screening and separation measures to ensure that no confidential information about the USC or Giannulli and Loughlin matters passes between Latham personnel working on the cases. Ex. A ¶ 23. Latham has erected an ethics wall on its computer system, which automatically prevents Latham timekeepers who have performed material work on either case from accessing the case file of the other. *Id.* ¶ 24. Latham's Ethics Committee also circulated a memorandum to all affected personnel, instructing them that they are barred not only from accessing screened case files, but also from discussing any part of the case with the team on the other side of the wall. *Id.* ¶ 25.

Consistent with Latham's advice, Giannulli and Loughlin also retained separate co-counsel. Giannulli has retained George Vien of Donnelly, Conroy & Gelhaar, LLP, and Mark Beck of Mark Beck Law, PC. Ex. B. ¶ 17. Mr. Vien served as an Assistant U.S. Attorney in this District for over 20 years, and before that in the Southern District of Florida; he has tried over 40

federal criminal cases in his distinguished career.[1]  Mr. Beck, a Fellow of the American College

of Trial Lawyers, is likewise a former Assistant U.S. Attorney who served in the Central District

of California; he has tried many federal criminal cases and served as Assistant Chief of the

Criminal Division.  Loughlin is represented by David Scheper of Scheper Kim & Harris LLP.  Ex.

C ¶ 17.  Mr. Scheper is also a Fellow of the American College of Trial Lawyers and was also an

Assistant U.S. Attorney in the Central District of California, where he served as Chief of the

Criminal Division.

In April 2019, the Government contacted Latham to inquire about the potential conflict

from Latham's representation of USC.  Latham responded by explaining that its representation of

USC is wholly unrelated to this case and that Latham had taken appropriate steps to avoid any

direct adversity with USC.  *See* Letter from W. Trach to E. Rosen (May 6, 2019), Ex. B to Gov't

Mot., ECF No. 400-1.  Latham explained that (1) Giannulli and Loughlin had each retained

separate co-counsel; (2) Latham would recuse itself from any portion of the case that would require

direct adversity with USC; (3) Giannulli and Loughlin had consented to this arrangement; and

(4) the arrangement complies with the applicable ethics rules and avoids any potential conflict of

interest.  *Id.* at 1-6.

---

[1]  Mr. Vien's law firm, Donnelly Conroy, also represents cooperating witness Davina Isackson, Gov't Mot. 24, ECF No. 400, as well as Peter Jan Sartorio, a defendant who pleaded guilty in related case *United States v. Abbott*, No. 19-cr-10117 (D. Mass.), and also another potential party of interest related to this case, Decl. of George W. Vien ¶¶ 3, 9, attached as Ex. D.  As detailed in Mr. Vien's declaration, Donnelly Conroy has taken active steps to screen and separate any confidential information relating to its representations of Giannulli and any related representation. Ex. D ¶¶ 10-11.  Upon being retained, Donnelly Conroy implemented an ethics wall, which prohibits any attorney or staff member working on either representation from discussing any confidential information, and even matters of public record, with attorneys or staff members working on the other matters.  *Id.*  Any paper files relating to the representations are segregated, and Donnelly Conroy arranged for its computer vendor to restrict access to the electronic case files to only the specific attorneys and staff members working on the case.  *Id.*  Moreover, Giannulli has waived any potential conflict of Donnelly Conroy.  Ex. B ¶¶ 18-20.

On May 23, 2019, the Government filed the motion currently before the Court. *See* Gov't Mot., ECF No. 400. The Government asserts that Latham's joint representation of Giannulli and Loughlin poses "[p]otential [c]onflicts," *id.* at 25, and that Latham's representation of USC poses a "[s]erious [c]onflict[]," *id.* at 19. The Government also asserts that Donnelly Conroy's representation of Giannulli and cooperating witness Davina Isackson poses a "serious conflict." *Id.* at 10 n.8; *see also id.* at 24. The Government thus requests that this Court conduct a hearing pursuant to *Foster*, 469 F.2d 1, and Federal Rule of Criminal Procedure 44(c). The Government's motion does not ask the Court to disqualify Latham from representing Giannulli and Loughlin in this case, although that seems to be implicit in its discussion of the alleged conflicts.

## ARGUMENT

### I.  THE SIXTH AMENDMENT RIGHT TO COUNSEL OF CHOICE IS A FUNDAMENTAL CONSTITUTIONAL RIGHT THAT CANNOT BE OVERRIDDEN EXCEPT IN EXTRAORDINARY CIRCUMSTANCES

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." This right to counsel is a crucial constitutional right, designed to "insure fundamental human rights of life and liberty." *Gideon v. Wainwright*, 372 U.S. 335, 343 (1963) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 462 (1938)). As part of that constitutional right, a defendant is entitled to retain counsel of her own choosing at her own expense. *United States v. Gonzalez-Lopez*, 548 U.S. 140, 147-48 (2006). Indeed, the Supreme Court has described the right to choose one's counsel as "the root meaning of the constitutional guarantee." *Id.*; *see also Luis v. United States*, 136 S. Ct. 1083, 1097 (2016). As the Court has explained, "having the ability to retain the 'counsel [they] believe[] to be best'—and who might in fact be superior to any existing alternatives—matters profoundly." *Kaley v. United States*, 571 U.S. 320, 337 (2014) (alterations in original) (citation omitted). As a result, courts

"must recognize a presumption in favor of [a defendant's] counsel of choice." *Wheat v. United States*, 486 U.S. 153, 164 (1988).

The wrongful denial of a criminal defendant's right to counsel of choice is automatically reversible error on appeal. Indeed, the Supreme Court has made clear that such a denial is one of the few constitutional errors classified as "structural defects," and thus requires reversal on appeal without any showing of prejudice. *Gonzalez-Lopez*, 548 U.S. at 148-50; *see also United States v. Robinson*, 753 F.3d 31, 39 (1st Cir. 2014). Violating the right to chosen counsel is not "simply an error in the trial process itself"; rather, it "affect[s] the framework within which the trial proceeds." *Arizona v. Fulminante*, 499 U.S. 279, 310 (1991). Erroneously depriving a defendant of her right to chosen counsel tarnishes the entire trial—and "no criminal punishment may be regarded as fundamentally fair" when the right is violated. *Id.* (citation omitted).

Because the right to counsel of choice is so essential, it can be overcome only in truly extraordinary circumstances. Disqualification of counsel "should be a measure of last resort," and the Government bears "a 'heavy burden' in demonstrating that disqualification is justified" in any particular case. *In re Grand Jury Proceedings*, 859 F.2d 1021, 1026 (1st Cir. 1988) (quoting *United States v. Diozzi*, 807 F.2d 10, 12 (1st Cir. 1986)). Indeed, this Court has repeatedly held that courts must carefully consider "means *short* of disqualification" before depriving a defendant of her chosen counsel. *United States v. Melo,* 702 F. Supp. 939, 942 (D. Mass. 1988) (emphasis added).

One valid basis for overriding a defendant's right to choose his own counsel is when that counsel labors under an actual conflict of interest or faces a "serious potential for conflict." *Wheat*, 486 U.S. at 164. Here, Local Rule 83.6.1(a) makes clear that any inquiry into such conflicts is

governed by Massachusetts Rule of Professional Conduct 1.7, which addresses conflicts arising from an attorney's concurrent representation of multiple clients. Rule 1.7 reads:

> **(a)** Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
>
>> **(1)** the representation of one client will be directly adverse to another client; or
>>
>> **(2)** there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.
>
> **(b)** Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
>
>> **(1)** the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
>>
>> **(2)** the representation is not prohibited by law;
>>
>> **(3)** the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
>>
>> **(4)** each affected client gives informed consent, confirmed in writing.

Under Rule 1.7, there are two ways a conflict can arise based on an attorney's concurrent representation of multiple clients. *First*, such a conflict can arise under Rule 1.7(a)(1) if the representation of one client is "directly adverse to another client." Such direct adversity requires more than some generalized grievance or squabble. Rather, direct adversity requires "a conflict as to the *legal rights and duties* of the clients." *Maling v. Finnegan, Henderson, Farabow, Garrett & Dunner, LLP*, 42 N.E.3d 199, 204 (Mass. 2015) (emphasis added) (quoting ABA Standing Comm. on Ethics & Prof'l Responsibility, Formal Op. 05-434 at 140 (2004) (ABA Op. 05-434)); *see also Bryan Corp. v. Abrano*, 52 N.E.3d 95, 103 (Mass. 2016). *Second*, a conflict can arise under Rule 1.7(a)(2) if there is a "significant risk" that the representation of one client will be

"materially limited" by the attorney's responsibilities to another client. But even if a conflict does exist under Rule 1.7(a)(1) or (2), representation is permissible under Rule 1.7(b) if the affected client(s) provide informed consent and Rule 1.7(b)'s other requirements are met.

## II. LATHAM'S CONCURRENT REPRESENTATION OF GIANNULLI AND LOUGHLIN POSES NO CURRENT OR FORESEEABLE CONFLICT

Giannulli and Loughlin do not object to the Government's request for a Rule 44(c) hearing to address their concurrent representation by Latham. At that hearing, both Giannulli and Loughlin—as well as all their counsel—will be prepared to confirm, to the Court's satisfaction, that there is no actual or foreseeable conflict of interest associated with the joint representation.

It is well understood that "[w]hen two or more defendants share the same counsel, conflicts of interests might arise." *United States v. Hernandez-Lebron*, 23 F.3d 600, 603 (1st Cir. 1994). Joint representation can strain an attorney's duty of undivided loyalty to each client, as the best defense for one client may depend on compromising the defense of the other client. But joint representation can also confer "certain advantages": "A common defense often gives strength against a common attack." *Holloway v. Arkansas*, 435 U.S. 475, 482-83 (1978) (citation omitted). Thus, the propriety of joint representation depends on the particular circumstances of the representation.

Rule 44(c) and First Circuit precedent recognize this fact-specific inquiry: They require courts to inquire about joint representation, and to ensure that defendants are aware of their rights to individual representation should they wish it. *See Foster*, 469 F.2d at 5. But joint representation is permitted unless it "gives rise to a conflict of interests adversely affecting the lawyer's performance." *United States v. Cardona-Vicenty*, 842 F.3d 766, 771-72 (1st Cir. 2016) (citation omitted).

Here, Latham's joint representation of Giannulli and Loughlin poses no conflict under Rule 1.7(a) because there is neither direct adversity nor a significant risk that their representation by Latham will be materially limited by the joint representation. Indeed, there is no adversity as to Giannulli and Loughlin's legal rights and duties *at all*, because those interests are completely aligned. *See United States v. Medel*, 592 F.2d 1305, 1312 (5th Cir. 1979) (joint representation of husband and wife presented no conflict of interest where their interests were "closely aligned such that their united front strategy" was logical); *cf. United States v. Martorano*, 620 F.2d 912, 918-19 (1st Cir. 1980) (no prejudice resulted from defendants' joint representation where the trial strategy chosen by counsel benefited both defendants). Giannulli and Loughlin are innocent of the charges brought against them and eager to clear their names. And they believe their interests will be advanced most effectively by presenting a united front against the Government's baseless accusations.

Nor is there is any foreseeable conflict. Giannulli and Loughlin are similarly situated, and none of their counsel currently anticipates that their interests will diverge. The Supreme Court has recognized that "[a]n 'attorney representing two defendants in a criminal matter is in the best position professionally and ethically to determine when a conflict of interest exists or will probably develop in the course of a trial.'" *Cuyler v. Sullivan*, 446 U.S. 335, 347 (1980) (citation omitted). When examining such conflicts, "[t]rial courts appropriately and 'necessarily rely in large measure upon the good faith and good judgment of defense counsel.'" *Burger v. Kemp*, 483 U.S. 776, 784 (1987) (citation omitted). And "although a district court must inquire when advised of a potential conflict of interest, the court may rely on counsel's representations that no such conflict exists." *United States v. Santiago-Lugo*, 167 F.3d 81, 84 (1st Cir. 1999).

Latham takes its ethical obligations seriously. It sees no material risk of a potential conflict as a result of its joint representation of Giannulli and Loughlin. Ex. A ¶ 10. Moreover, Latham has detailed for them both the risks associated with joint representation, and has explained their right to individual representation. *Id.* ¶¶ 11-16. Both Giannulli and Loughlin have consented in writing to Latham's joint representation. *See United States v. Burgos-Chaparro*, 309 F.3d 50, 52 (1st Cir. 2002) ("[A] criminal defendant is entitled to conflict-free representation, although the right may often be waived after appropriate warnings."); Ex. B ¶ 11; Ex. C ¶ 11. In addition, the Latham attorneys representing Giannulli and Loughlin are confident that they can competently and diligently represent both clients in this matter. Ex. A ¶¶ 9-10. Thus, even assuming a conflict could develop, Rule 1.7(b) would be satisfied regardless.

Of course, this case is currently in its early stages. It is theoretically possible that an unexpected conflict of interest could somehow emerge down the road. In that unlikely scenario, Latham would notify the Court immediately and withdraw entirely if required to under the applicable rules or by the Court. But "speculative or theoretical conflicts of interests" do not require disqualification. *Cardona-Vicenty*, 842 F.3d at 773.

If a conflict did somehow emerge later in the proceedings, Giannulli and Loughlin would remain represented by their individual co-counsel—Mark Beck, George Vien, and David Scheper—each of whom represents only one defendant. All three co-counsel will be fully involved in the case and prepared to take over lead roles in the representation of Giannulli or Loughlin if that need arises. Whatever happens, Giannulli and Loughlin will have their interests fully protected, and the case will proceed without undue delay.

It bears noting that, in addition to Giannulli and Loughlin, several other sets of defendants in this case are concurrently represented by the same law firm. Gov't Mot. 2 (noting four other

sets of defendants in this category). As of the date of this filing, Magistrate Judge Kelley has conducted Rule 44(c) hearings for two of the affected defendants. *See* Order re Conflict of Interest, ECF No. 425; Order re Conflict of Interest, ECF No. 416. In each case, Judge Kelley approved the joint representations based on a colloquy with the defendant and his or her counsel and their execution of written waivers. Giannulli and Loughlin are prepared to give the Court similar assurances at their own hearing.

## III. LATHAM'S REPRESENTATION OF USC IN AN UNRELATED REAL-ESTATE MATTER POSES NO CURRENT OR FORESEEABLE CONFLICT

The Government's motion also asserts (at 19) that Latham's representation of USC in the unrelated Los Angeles Coliseum real-estate dispute poses a "[s]erious [c]onflict[]" insofar as USC is the alleged victim of the conspiracy charged in the complaint. The Government states (at 20) that "multiple witnesses from USC are expected to testify," and that "if the defendants are convicted, USC will be entitled as a matter of law to restitution and to provide a victim-impact statement." The Government argues that USC's interests are directly adverse to Giannulli and Loughlin's for purposes of Rule 1.7(a)(1), and it seems to imply (at 19) that any effort to screen Latham off from aspects of the case adverse to USC would create a "significant risk" of prejudice to Giannulli and Loughlin that would run afoul of Rule 1.7(a)(2).

The Government is mistaken. USC is not a party to this case, and its status as an alleged victim does not automatically trigger a conflict of interest requiring Latham's withdrawal. Latham will avoid any direct adversity with USC by relying on co-counsel to handle any cross-examination of USC witnesses and any restitution proceeding in which USC's financial interests are directly at stake. At all times, Giannulli and Loughlin will also be represented by experienced co-counsel who are fully capable of robustly defending their interests—both generally and vis-à-vis USC.

Under these conditions, Latham's representation of Giannulli and Loughlin fully complies with Rule 1.7(a). There is thus no reason to deny them their Sixth Amendment counsel of choice.

### A. Latham Has Taken Appropriate Measures To Screen Off Its Work For Giannulli And Loughlin From Its Work For USC

At the outset, it bears emphasizing that Latham's work for USC is entirely unrelated to its work for Giannulli and Loughlin. As explained above, the only matter in which Latham currently represents USC is a real-estate matter involving the Los Angeles Memorial Coliseum Commission (including related land-use permitting work). Ex. A ¶ 5. That matter is being handled by attorneys in Latham's Los Angeles and San Francisco offices. *Id.* And that matter has nothing to do with USC's admissions process or the criminal allegations at issue in this case. *Id.*

As noted, shortly after being retained by Giannulli and Loughlin, Latham implemented robust screening and separation measures to ensure that no confidential information about the USC or Giannulli and Loughlin matters passes between Latham personnel working on the cases. Ex. A ¶ 23. Latham has erected an ethics wall on its computer system, which automatically prevents Latham timekeepers who have performed material work on either case from accessing the case file of other matter. *Id.* ¶ 24. Latham's Ethics Committee also circulated a memorandum to all affected personnel, instructing them that they are barred from accessing screened case files and any part of either case with the team on the other side of the wall. *Id.* ¶ 25. None of the Latham attorneys or staff members working on this case is involved—in *any* way—with Latham's representation of USC.

In short, Latham has made every effort to ensure that the firm's unrelated representation of USC, on the one hand, and the firm's representations of Giannulli and Loughlin, on the other, remain entirely separate. Latham will continue to ensure a complete separation between the teams working on both matters throughout the pendency of this case.

**B.      Latham Will Not Become Adverse To USC In This Proceeding**

Under Rule 1.7(a)(1), a conflict of interest exists when a firm's representation of one client is "directly adverse" to another client. Latham's joint defense of Giannulli and Loughlin in this criminal proceeding does not automatically trigger such direct adversity. This proceeding was initiated by the Government, and Latham's representation of Giannulli and Loughlin is—as of now—"directly adverse" only to the United States. Although the Government asserts that USC is the victim of the alleged crime, that status does not inherently create any conflict with USC's "legal rights [or] duties." *Maling*, 42 N.E.3d at 204. Moreover, to the extent that USC later becomes involved in the case—either as a witness or victim seeking restitution in a sentencing proceeding— Latham will recuse itself from that aspect of the case. In such circumstances, Giannulli and Loughlin will be ably represented by their experienced co-counsel.

The Government's main argument that a conflict exists here is predicated on its assumption that Latham will eventually need to cross-examine USC witnesses at some point during the proceedings. According to the Government, USC representatives will likely testify for the Government during its case-in-chief, as well as during a potential sentencing phase in which USC may claim an entitlement to restitution. Gov't Mot. 20.

Latham has already explained to the Government that it cannot be directly adverse to USC. *See* Gov't Mot. Ex B. at 3, ECF No. 400-1. For these reasons, Latham has made clear that it will not cross-examine USC representatives while USC remains a Latham client; nor will it participate in any preparations for such cross-examination. *Id.* at 4. Instead, those USC-specific matters will be conducted entirely by Giannulli and Loughlin's other experienced defense counsel—Mark Beck, George Vien, and David Scheper.

The use of co-counsel to handle cross-examination of another client—and thereby to avoid any conflict—is well-established. Almost fifty years ago, before the American Bar Association's

Model Rules were even drafted, Judge (later Justice) Stevens suggested that an ethically conflicted attorney should have "made an offer to have some other lawyer retained for th[e] limited purpose" of cross-examining the relevant witness. *United States v. Jeffers*, 520 F.2d 1256, 1266 (7th Cir. 1975). Since then, courts have often recognized that the use of co-counsel can eliminate any potential for conflict.[2] Indeed, the American Bar Association's Standing Committee on Ethics and Professional Responsibility has remarked that, in this type of situation, "a sufficient solution may be to provide for other counsel, also representing the litigation client, to deal with the client-witness." ABA Standing Comm. on Ethics & Prof'l Responsibility, Formal Op. 92-367 at 3 (1992). The Committee has even gone so far as to say that "the retention of another lawyer *solely* for the purpose of examining the principal lawyer's client" may be proper. *Id.* (emphasis added).

---

[2]    *See, e.g.*, *United States v. Burns*, 526 F.3d 852, 857 (5th Cir. 2008) (approving of fact that, "out of an abundance of caution, the affected attorney's co-counsel cross-examined the witness"); *United States v. Lorenzana-Cordon*, 125 F. Supp. 3d 129, 137 (D.D.C. 2015) (holding that disqualification was unnecessary because having co-counsel "represent[] Defendant for the purposes of cross-examination of the witness and, if necessary, part of the opening and closing arguments, will ensure that Defendant receives zealous advocacy as to all aspects of his case"); *Wal-Mart Stores, Inc. v. Vidalakis*, No. 07-cv-0039, 2007 WL 4468688, at *4 (W.D. Ark. Dec. 17, 2007) (denying disqualification motion after finding that "the use of outside, independent counsel to handle the depositions, discovery exchange, and all trial issues involving Wal-Mart is the most reasonable solution"); *In re Wagar*, No. 06-mc-127, 2006 WL 3699544, at *14 (N.D.N.Y. Dec. 13, 2006) (concluding that having co-counsel depose a third-party witness, who was a former client of primary defense counsel, was an "efficacious safeguard" against a potential conflict); *Sykes v. Matter*, 316 F. Supp. 2d 630, 633 (M.D. Tenn. 2004) (concluding that "withdrawal [wa]s not required" because "the potential for conflict can be removed by allowing plaintiff to retain other counsel for purposes of cross-examin[ation]"); *Sumitomo Corp. v. J.P. Morgan & Co.*, No. 99-cv-4004, 2000 WL 145747, at *4 (S.D.N.Y. Feb. 8, 2000) (denying disqualification motion because client had used separate counsel, which prevented any conflict from coming into existence); *Swanson v. Wabash, Inc.*, 585 F. Supp. 1094, 1097 (N.D. Ill. 1984) (holding that "no conflict of interest is possible" if the relevant witness is cross-examined by independent counsel); Ronald D. Rotunda, *Resolving Client Conflicts by Hiring "Conflicts Counsel"*, 62 Hastings L.J. 677, 680 (2011) (remarking that "the use of conflicts counsel in certain situations is a useful and valuable solution that respects legitimate client concern"); *id.* at 693 (noting that, so long as the client whose primary counsel will not examine the relevant witness "agrees to that limitation, Client 2 could not force the disqualification of the Law Firm, because the Law Firm will not be adverse to Client 2, even if Client 2 does not consent").

Here, Messrs. Beck, Vien, and Scheper are fully capable of handling all cross-examinations of USC representatives and any components of the case that may require acting adverse to USC. Moreover, Giannulli and Loughlin have discussed this arrangement with independent counsel, and have formally consented in writing. *See* Ex. B ¶ 16; Ex. C ¶ 16. This use of co-counsel will prevent any conflict from materializing.

The Government also argues that Latham's representation of Giannulli and Loughlin during a hypothetical sentencing phase involving USC creates a conflict requiring disqualification. That too is mistaken. Under Rule 1.7, direct adversity requires "a conflict as to *the legal rights and duties* of the clients." *Maling*, 42 N.E.3d at 204 (emphasis added); *see also* ABA Op. 05-434 at 140. But Giannulli and Loughlin have not been found guilty, and they are—and must be presumed—innocent. The very purpose of this case is to adjudicate the legal rights of *Giannulli and Loughlin*. USC is not a party to this case, and it has no present right—legal or otherwise—to restitution. To the extent that USC, as an alleged victim, may wish to see Giannulli and Loughlin convicted and punished, that is an "interest" only in a colloquial sense.

To be sure, if Giannulli and Loughlin were found guilty, then USC (and any other potential victims) might be entitled to restitution. But it is impossible to assess with any degree of certainty whether restitution is a significant factor here, or who will be entitled to it. Indeed, although the Government asserts that this "Court *will* adjudicate U.S.C.'s legal right to restitution in the context of any sentencing proceeding," Gov't Mot. 22, the Government has previously acknowledged the uncertainty surrounding restitution at the plea hearing for a related defendant, Plea Hr'g Tr. 22:25-23:4, *United States v. Semprevivo*, No. 19-cr-10117 (D. Mass. May 7, 2019), ECF No. 363 ("[I]t's impossible for me to sort of—in a case that's really at its inception determine how much restitution will be awarded or even if restitution at all will be awarded or if the victim here, Georgetown, will

even seek restitution to begin with."), excerpts attached as Ex. E; *id.* at 24:13-16 ("It's impossible at the plea to know exactly who's entitled to restitution, whether other victims will come forward or not, whether victims will even seek restitution. *These are unknowns*." (emphasis added)).

Moreover, any right to restitution would not materialize *unless* and *until* Giannulli and Loughlin are found guilty. And, as noted, *even if* Giannulli and Loughlin are found guilty, no conflict will actually arise: As with any cross-examination of USC representatives during trial, Latham's co-counsel will handle any restitution proceedings involving USC.

### C. The Government Is Wrong To Argue That Using Co-Counsel Would Prejudice Giannulli And Loughlin And Undermine Their Defense

The Government appears to acknowledge—at least implicitly—that Latham's proposed use of co-counsel would eliminate any direct adversity to USC and thus eliminate any conflict of interest under Rule 1.7(a)(1). Nonetheless, the Government asserts (at 23) that relying on co-counsel "poses inherent problems on the facts of this case." In doing so, the Government seems to be suggesting that the proposed arrangement would violate Rule 1.7(a)(2), which provides that a conflict exists if there is a significant risk that the representation of one client will be "materially limited" by the attorney's representation of a different client.

The Government's Rule 1.7(a)(2) argument incorrectly implies (at 24) that the allocation of responsibility among Giannulli and Loughlin's counsel will be ineffective and prejudice Giannulli and Loughlin's defense by limiting their ability to address issues relating to USC. Specifically, the Government declares (at 23) that "[a]mong the likely legal and factual issues" that will arise in this case are whether USC's coaches and administrators owed USC a fiduciary duty, whether any such duty was breached, and whether USC knew of or sanctioned the conduct of its coaches and administrators. The Government further argues (at 24) that Latham—in its

efforts to avoid a possible conflict—has "disclaim[ed]" various "critical lines of potential defense" relating to USC.  The Government's assertions are both wildly premature and unfounded.

It is far too soon to know with any degree of certainty what defenses Giannulli and Loughlin will choose to raise at trial.  This case is in its early stages.  The Government began producing discovery only last month—more than 1.9 million documents have been handed over thus far—and defense counsel are currently reviewing that information.  Giannulli and Loughlin are innocent of the charges against them, but the precise shape of their defense will turn, in significant part, on what the ongoing investigation into the underlying facts reveals.

Similarly, it is too soon to determine the extent to which—as the Government asserts—USC is "central[]" to the case, and whether there are "likely legal and factual issues" involving USC that "*will* arise over the course" of the case.  Gov't Mot. 23 (emphasis added).  Thus far, the Government has declined Giannulli and Loughlin's requests to specifically identify the relevant *Brady* material or other evidence on which it bases these assertions about their likely USC-related defenses.  Giannulli and Loughlin would welcome the Government's cooperation so that their counsel can fairly consider the Government's assertions of conflicts based on the full panoply of relevant information.  But it is entirely inappropriate for the Government to threaten defendants' Sixth Amendment rights to their counsel of choice before that careful review is complete.

Moreover, the Government's statement that Latham has preemptively "disclaim[ed]" defenses involving USC—thereby prejudicing Giannulli and Loughlin—is simply wrong.  That argument rests on a blatant misreading of Latham's May 6, 2019 letter to Assistant U.S. Attorney Rosen, in which Latham explained to the Government why no conflict exists here.  *See* Letter from W. Trach to E. Rosen (May 6, 2019), Ex. B to Gov't Mot., ECF No. 400-1.

Latham has never disclaimed any potential defense in this case. Far from it: Latham has disclaimed only its own *involvement in cross-examination* and *restitution*, insofar as doing so would require Latham to be directly adverse to USC. Latham's May 6 letter pointed out that, "[b]ased on information *currently known* to us, our clients' defense will focus on their knowledge and intent, as well as the legal deficiencies in the government's mail fraud and honest services theories." *Id.* at 2 (emphasis added). That statement obviously did not constrain—in any way— the full spectrum of Giannulli and Loughlin's potential defenses. Nor did it suggest that Giannulli or Loughlin would refrain from using non-Latham counsel to cross-examine any potential USC witnesses, or from challenging any potential restitution award. On the contrary, Latham's letter made absolutely clear that Giannulli and Loughlin would be able to exercise their rights with respect to these aspects of the case through their co-counsel. *Id.* (stating that "*Latham* will recuse itself" from cross-examining USC and other aspects of the case requiring adversity to USC, but that these matters will be handled "by co-counsel" (emphasis added)).

To reiterate: Latham will not be involved in cross-examining USC's representatives or challenging any restitution sought by USC during a hypothetical sentencing phase. But Giannulli and Loughlin will be fully prepared to cross-examine USC's representatives or challenge any restitution sought by USC through their other counsel, Messrs. Vien, Beck, and Scheper. Co-counsel are full members of the defense team—and will remain fully involved in all key aspects of the case, including formulating the "overall defense strategy." Gov't Mot. 24. Thus, Giannulli and Loughlin will at all times have the benefit of "zealous advocacy as to all aspects of [their] case." *Lorenzana-Cordon*, 125 F. Supp. 3d at 137.[3]

---

[3] And any argument as to potential prejudice to Giannulli or Loughlin is moot here given their informed written consent, as contemplated by Massachusetts Rule of Professional Conduct 1.7(b). The Latham attorneys representing Giannulli and Loughlin know that they can competently and

It is of course possible that this case will evolve in such a way that a conflict might arise at some unidentified point down the road. But a mere speculative, potential conflict that could hypothetically arise does not warrant interfering with a defendant's right to counsel of choice. *See, e.g.*, *United States v. Driscoll*, No. 94-cr-10153, 1994 WL 549504, at *4 (D. Mass. Oct. 4, 1994) (denying motion to disqualify where "[a]ll that the government has offered is *speculation*"); *Melo*, 702 F. Supp. at 942 (requiring "an identifiable actual or potential conflict of interest"); *see also Cardona-Vicenty*, 842 F.3d at 773 ("speculative or theoretical conflicts of interests do not amount to a Sixth Amendment violation"). If a conflict does arise in the future, Latham will take appropriate steps to address it—including by withdrawing from the case entirely, if need be. But neither Giannulli nor Loughlin, nor the Court, the co-defendants, USC, nor even the Government will be prejudiced by Latham's continued representation of Giannulli and Loughlin at this stage. Latham's co-counsel will actively be participating in their defense at every turn, and they will be ready and able to take over entirely in the unlikely scenario where that becomes necessary.

## CONCLUSION

Giannulli and Loughlin agree that this Court should schedule a hearing pursuant to *Foster* and Federal Rule of Criminal Procedure 44(c) so that Giannulli and Loughlin can apprise the Court of their informed consent to their choice of counsel. But there is no conflict of interest here—and thus no justification for interfering with Giannulli and Loughlin's Sixth Amendment right to counsel of choice.

---

diligently represent both Giannulli and Loughlin, and Giannulli and Loughlin have provided informed consent to Latham's representation of them notwithstanding Latham's recusal from the USC portions of the case. *See* Ex. B ¶ 16; Ex. C ¶ 16. Rule 1.7(b)'s requirements are thus satisfied.

Dated: June 27, 2019

Respectfully submitted,

/s/ Sean M. Berkowitz
Sean M. Berkowitz (*admitted pro hac vice*)
LATHAM & WATKINS LLP
330 North Wabash Avenue
Suite 2800
Chicago, IL 60611
Phone: 312.777.7700
Fax: 312.993.9767
sean.berkowitz@lw.com

William J. Trach (BBO #661401)
LATHAM & WATKINS LLP
200 Clarendon Street
Boston, MA 02116
Phone: 617.948.6000
william.trach@lw.com

Perry J. Viscounty (*admitted pro hac vice*)
LATHAM & WATKINS LLP
650 Town Center Drive
20th Floor
Costa Mesa, CA 92626
Phone: 714.540.1235
perry.viscounty@lw.com

Roman Martinez (*admitted pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004
Phone: 202.637.2200
roman.martinez@lw.com

*Counsel for Mossimo Giannulli and Lori Loughlin*

/s/ George W. Vien
George W. Vien (BBO #547411)
Joshua N. Ruby (BBO #679113)
DONNELLY, CONROY & GELHAAR, LLP
260 Franklin Street
Suite 1600
Boston, MA 02110
Phone: 617.720.2880
Fax: 617.720.3554
gwv@dcglaw.com
jnr@dcglaw.com


/s/ Mark E. Beck
Mark E. Beck  (*admitted pro hac vice*)
Mark Beck Law, A Professional Corporation
350 West Colorado Boulevard
Suite 200
Pasadena, CA 91105
Phone: 213.596.7828
mbeck@markbecklaw.com


*Counsel for Mossimo Giannulli*


/s/ David C. Scheper
David C. Scheper (*admitted pro hac vice*)
SCHEPER KIM & HARRIS LLP
601 West Fifth Street
12th Floor
Los Angeles, CA 90071
Phone: 213.613.4655
Fax: 213.613.4656
dscheper@scheperkim.com


*Counsel for Lori Loughlin*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document, which was filed with the Court through the CM/ECF system, will be sent electronically to all registered participants as identified on the Notice of Electronic Filing, and paper copies will be sent via first class mail on June 27, 2019 to those identified as non-registered participants.

*/s/ Sean M. Berkowitz*
Sean M. Berkowitz