UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　v.<br><br>MOSSIMO GIANNULLI,<br><br>　　　　Defendant. | Case No. 19-cr-10080-NMG |

**MEMORANDUM IN SUPPORT OF MOSSIMO GIANNULLI'S EMERGENCY MOTION TO MODIFY SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)**

I.      INTRODUCTION

On August 21, 2020, the Court sentenced Mossimo Giannulli—a 57-year old, non-violent, first time offender—to five months imprisonment for participating in a conspiracy to fraudulently obtain an advantage in securing college admission for his children.  The Court recommended to the Bureau of Prisons ("BOP") that Mr. Giannulli serve his sentence at "FCI-Lompoc, commensurate with the appropriate security level."  Dkt. No. 1493.  The BOP ultimately designated Mr. Giannulli to the minimum security satellite camp at USP Lompoc.  Pursuant to the Court's order and the terms of his plea agreement, Mr. Giannulli reported to USP Lompoc on November 19, 2020, expecting to be quarantined with other minimum security prisoners for a short period of time before being confirmed COVID-negative, and then released from quarantine to serve his sentence at the minimum security camp.  Instead, Mr. Giannulli was immediately placed in solitary confinement in a small cell at the adjacent medium security penitentiary, 24 hours per day with only three short 20 minute breaks per week, where he remained for **56 days** before finally being transferred to the camp yesterday (January 13).  This means Mr. Giannulli spent almost 40% of his total sentence confined in solitary quarantine, despite testing negative for COVID-19 at least ten times and despite his counsel's multiple requests that BOP release him from quarantine.

The conditions under which Mr. Giannulli has been incarcerated are far more extreme than what the Court recommended, what BOP be determined was appropriate based on his individual circumstances, or what is warranted by the circumstances of this case.  Indeed, this Court previously recognized that even a limited time in solitary quarantine is such a severe form of incarceration that it warranted a reduction in sentence for a similarly-situated defendant:

> Given the described circumstances, the Court determines that Macfarlane's ***two-week confinement in solitary quarantine in a higher security facility is the equivalent of two months in the Camp*** to which he was originally assigned.

2

*United States v. Macfarlane*, No. 1:19-cr-10131-NMG (D. Mass. Apr. 14, 2020), Dkt. No. 352 at 3 (reducing the defendant's sentence to time served and releasing him to home confinement). Here, Mr. Giannulli spent nearly two months in solitary quarantine, which constitutes approximately 40% of his entire sentence and a period of isolation almost four times as long as the defendant in *Macfarlane*. The toll on Mr. Giannulli's mental, physical, and emotional well-being has been significant. Applying the Court's reasoning from *Macfarlane*, his eight weeks of solitary quarantine in the medium security penitentiary would be the equivalent of approximately eight months in the minimum security camp to which he was assigned to serve his five-month sentence.

Mr. Giannulli's 56 days in solitary quarantine, in combination with the ongoing COVID-19 pandemic and resulting Department of Justice ("DOJ") guidance for BOP to reduce prison populations by releasing eligible inmates to home confinement, present "extraordinary and compelling reasons" for the Court to modify Mr. Giannulli's sentence under 18 U.S.C. § 3582(c)(1). Accordingly, Mr. Giannulli respectfully moves the Court to modify his sentence by ordering him released from BOP custody to serve the remainder of his sentence in home confinement.

## II.     BACKGROUND AND PROCEDURAL POSTURE

On May 22, 2020, Mr. Giannulli pled guilty to conspiracy to commit wire and mail fraud and honest services fraud, resulting from his admittedly misguided actions in connection with his daughters' college applications. *See* Dkt. No. 1231. On August 21, 2020, the Court accepted the terms of Mr. Giannulli's plea agreement with the government and, among other things, sentenced Mr. Giannulli to an incarceration period of 5 months and imposed a fine of $250,000. *See* Dkt. No. 1493. The Court recommended that Mr. Giannulli be "designated to a facility closest to his home in southern California, preferably FCI-Lompoc, commensurate with the appropriate security level." *Id*. at 2.

Mr. Giannulli paid his fine in full, and reported to USP Lompoc on the date specified by the Court, November 19, 2020, to serve his five-month sentence. *See* Dkt. No. 1640 (Satisfaction of Judgment); Dkt. No. 1493 (Judgment in a Criminal Case); Declaration of William J. Trach ("Trach Decl."), ¶ 2. Upon his arrival, Mr. Giannulli was placed in isolated quarantine at USP Lompoc, the medium security federal penitentiary adjacent to the lower-security camp to which Mr. Giannulli was assigned. Trach Decl., ¶ 3. Mr. Giannulli was placed in a small cell by himself, where he spent 24 hours a day, with sporadic, narrow exceptions. *Id.* He was allowed to leave his cell to shower once every 3 days. *Id.* He was not allowed outside, had only sporadic access to a telephone to contact his family, and ate all of his meals alone in his cell. *Id.*, ¶ 4.

The originally stated justification for placing Mr. Giannulli in solitary quarantine at USP Lompoc was to ensure that he was free of COVID-19 and, thus, would not spread it by being transferred to the camp. Trach Decl., ¶ 5. After being placed in solitary quarantine on November 19, 2020, Mr. Giannulli was tested for COVID-19 at least ten separate times. *Id.*, ¶ 6. Mr. Giannulli's test results were negative every time. *Id.* After each negative test, without further explanation, Mr. Giannulli was returned to his cell, purportedly for another two-week period of solitary quarantine. *Id.*, ¶ 7. According to limited information provided to defense counsel from the government, the reason for Mr. Giannulli's almost two month stay in solitary confinement is that other prisoners who have arrived at the Lompoc quarantine facility since he reported have tested positive for COVID-19, and as a result BOP has determined that any individual in the facility must re-quarantine each time that occurs, despite the fact that individuals are not in contact with one another, and instead are confined to their cells 24 hours per day. *Id.*, ¶ 8.

BOP's desire to take action to limit the spread of COVID-19—including by quarantining new inmates for a limited period of time to ensure they do not report to prison with the virus—is

4

understandable, particularly in light of Lompoc's well-documented outbreak in 2020.[1] However, subjecting Mr. Giannulli to weeks and months of solitary quarantine at a higher security facility is fundamentally unfair and finds no support in the directives and guidance that DOJ has issued to BOP for stopping the spread of the virus. Specifically, on March 26, 2020, and again on April 3, 2020, Attorney General Barr issued guidance instructing BOP to identify candidates for home confinement based on criteria such as an inmate's age and vulnerability to COVID-19, the security level of the facility holding the inmate, whether the inmate's crime was violent and he/she poses a danger to the community, the inmate's discipline history while incarcerated, and the inmate's verifiable release plan. *See* Trach Decl., Exh. A (3/26/20 Barr Memo), Exh. B (4/3/20 Barr Memo). Moreover, the CARES Act, which took effect on March 27, 2020, expanded the scope of BOP's power to place inmates in home confinement. *See* CARES Act, H.R. 748, 116th Cong. (2020), § 12003(b)(2). Since March 26, 2020, and in accordance with DOJ's guidance, more than 20,200 inmates have been transferred to home confinement. *See* Trach Decl., Exh. C.

When Mr. Giannulli reported to USP Lompoc, one of his attorneys sent a letter to the Warden explaining that Mr. Giannulli satisfies the DOJ's criteria for transfer to home confinement and requesting that BOP exercise its expanded authority under the CARES Act to effect such a transfer. *See* Trach Decl., Exh. D (11/19/20 Letter from N. Garrett). Neither the Warden nor anyone else at BOP responded. Trach Decl., ¶ 14. On December 28, 2020—at which point Mr.

---

[1] *See, e.g.,* Dave Minsky, *Nearly all inmates at Lompoc FCI tested positive for coronavirus, most asymptomatic*, LOMPOC RECORD, June 5, 2020, https://lompocrecord.com/news/local /crime-and-courts/nearly-all-inmates-at-lompoc-fci-tested-positive-for-coronavirus-most-asymptomatic/article_f3fb06d7-f231-52b3-8f89-f21f11b73974.html (last visited Jan. 12, 2021); Willis Jacobson, *Inmate at Lompoc prison becomes fourth at facility to die from COVID-19*, Santa Maria Times, June 1, 2020, a https://santamariatimes.com/news/local/inmate-at-lompoc-prison-becomes-fourth-at-facility-to-die-from-covid-19/article_c5b4ad01-6a8e-5367-a43b-98aff5f169d9.html (last visited Jan. 12, 2021).

Giannulli had been in solitary quarantine for approximately 40 days—counsel for Mr. Giannulli sent another letter reiterating the request for an immediate transfer to home confinement. *See id.*, Exh. E (12/28/20 Letter from W. Trach). By letter dated January 7, 2021, Warden Bradley denied Mr. Giannulli's request for a transfer to home confinement. Trach Decl., Exh. F.

### III.   MR. GIANNULLI IS ELIGIBLE FOR RELIEF UNDER 18 U.S.C. § 3582(C)

Pursuant to 18 U.S.C. § 3582(c)(1)(A), a defendant who has exhausted his remedies with BOP, or where 30 days has passed since the request was made, may properly bring a motion asking the sentencing court to modify the defendant's term of imprisonment. This Court, and others in this district, have found the exhaustion requirement satisfied where the defendant wrote to BOP requesting a sentence reduction or transfer to home confinement and the request was denied. *See, e.g., Macfarlane*, No. 1:19-cr-10131-NMG, Dkt. No. 352; *United States v. Grinis*, No. 1:18-cr-10206-NMG (D. Mass. May 4, 2020), Dkt. No. 162; *see also United States v. Morales*, No. 1:16-cr-10251-DJC (D. Mass. July 28, 2020), Dkt. No. 191 (finding defendant exhausted administrative remedies where BOP denied request for transfer to home confinement). Further, courts across the country have waived the exhaustion requirement due to exigent circumstances resulting from the COVID-19 pandemic. *See, e.g., United States v. Ramirez*, No. 1:17-cr-10328-WGY (D. Mass. May 12, 2020), Dkt. No. 121; *United States v. Guzman Soto*, No. 1:18-CR-10086-IT, 2020 WL 1905323, at *5 (D. Mass. Apr. 17, 2020); *United States v. Zuckerman*, No. 16 CR. 194 (AT), 2020 WL 1659880 at *4 (S.D.N.Y. Apr. 3, 2020); *United States v. Colvin*, No. 3:19-cr-179 (JBA), 2020 WL 1613943, at *2 (D. Conn. Apr. 2, 2020); *United States v. Perez*, No. 17-cr-00513-AT, 2020 U.S. Dist. LEXIS 57265 (S.D.N.Y. Apr. 1, 2020).

Here, Mr. Giannulli has, on two separate occasions over the last two months, written to BOP requesting transfer to home confinement. *See* Trach Decl., Exhs. D, E. BOP ignored the first request, and expressly denied the second. Trach Decl., ¶ 14; *id.*, Exh. E. As a result, Mr.

Giannulli remained in solitary quarantine at USP Lompoc for eight weeks. Every day that Mr. Giannulli spent in isolation caused harm to his physical, mental, and emotional health. Pursuant to § 3582(c)(1)(A), this Court has authority to address Mr. Giannulli's motion, modify his sentence, and order his transfer to home confinement.

IV. **EXTRAORDINARY AND COMPELLING CIRCUMSTANCES WARRANT MODIFYING THE TERM OF MR. GIANNULLI'S IMPRISONMENT**

Section 3582(c)(1)(A) authorizes a sentencing court to reduce the terms of a defendant's imprisonment if the court finds "extraordinary and compelling reasons" to do so, and the reduction would be consistent with the factors set forth in 18 U.S.C. § 3553(a) and any "applicable policy statements issued by the Sentencing Commission."[2] Mr. Giannulli's situation meets all of these criteria and his requested relief is warranted.

    A.    <u>Mr. Giannulli's Extended Solitary Quarantine Constitutes an Extraordinary and Compelling Reason for Modifying his Sentence.</u>

As noted above, after considering all of the relevant factors under the section 3553(a), this Court determined that five months at the minimum security camp at USP Lompoc was a just and sufficient term of imprisonment for Mr. Giannulli's participation in the college admissions scandal. *See* Dkt. No. 1493 at 2. Mr. Giannulli is a 57-year old father, husband, and self-made successful businessman with no prior criminal record, convicted of a single count of a non-violent

---

[2] The requirement of consistency with "applicable policy statements" from the Sentencing Commission does not yet meaningfully apply where, as here, the motion is brought by a defendant rather than BOP. *See United States v. Redd*, No. 1:97-cr-00006-AJT, 2020 U.S. Dist. LEXIS 45977 at *7-8 (E.D. Va. Mar. 16, 2020) (recognizing that no "applicable policy statements" yet exist because "the only possibly applicable policy statement . . . applies only to motions for compassionate release filed by the BOP Director, not motions filed by Defendants"); *United States v. Young*, No. 2:00-cr-00002-1, 2020 U.S. Dist. LEXIS 37395 at *6 (M.D. Tenn. Mar. 4, 2020) ("[B]ecause the Sentencing Commission's policy statement 'has not been amended to reflect that, under the First Step Act, a defendant may now move for compassionate release after exhausting administrative remedies,' the existing policy statement, while providing 'helpful guidance,' is not ultimately conclusive given the statutory change.").

crime. The applicable sentencing guidelines provided for term of zero to six months imprisonment, with his five month sentence thus falling at the high end of the range. Trach Decl., Exh. G (M. Giannulli Sentencing Hearing Tr.), at 10:1-9.

Mr. Giannulli took responsibility for his actions and has complied in every way with the sentence imposed by the Court. *See* Dkt. No. 1218 (Plea Agreement); Dkt. No. 1640 (Satisfaction of Judgment); *see also* Trach Decl., ¶ 2. However, immediately upon reporting to USP Lompoc to serve his sentence at the camp, Mr. Giannulli was placed in solitary quarantine in a small cell at USP Lompoc, the higher security facility adjacent to the camp. Trach Decl., ¶ 3. Mr. Giannulli remained in isolation in his cell at USP Lompoc for 56 days. *Id.*, ¶ 9. Thus, for eight weeks—which constitutes approximately 40% of his sentence—Mr. Giannulli spent 24 hours a day confined in solitary quarantine, with no access to the outdoors, limited and sporadic ability to use the phone, to email, or to shower. *Id.*, ¶¶ 2-9.

This Court has previously recognized the extraordinary nature of a "non-violent first-time offender who does not pose a danger to the community" spending weeks confined "in solitary quarantine at a higher security facility" than the minimum security camp to which he was assigned. *Macfarlane*, No. 1:19-cr-10131-NMG, Dkt. No. 352 at 3. In that case, this Court found that two weeks spent in such circumstances of confinement was "the equivalent of two months in the Camp to which [the defendant] was originally assigned." *Id.* Here, Mr. Giannulli was confined in virtually identical conditions as the defendant in *Macfarlane*, but for more than ***four times*** as long. He was in solitary quarantine at a higher security facility for over ***eight weeks***, which the reasoning employed by this Court in *Macfarlane* would equate to ***eight months*** in the minimum security camp to which Mr. Giannulli was originally assigned. *See id.*

Mr. Giannulli respectfully submits that the severe circumstances of his extended confinement in solitary quarantine in a cell at USP Lompoc for eight weeks constitutes sufficiently extraordinary and compelling reasons to modify his sentence and order his transfer to home confinement.

> B. The COVID-19 Pandemic Provides Further Grounds on Which to Grant Mr. Giannulli's Requested Relief.

In addition to the extraordinary circumstances of Mr. Giannulli's extensive period of isolated confinement, the risks and circumstances arising from the ongoing COVID-19 pandemic provide further support for Mr. Giannulli's request.

There is no question that the COVID-19 pandemic has presented the country, in general, and the prison system, in particular, with extraordinarily dangerous circumstances. Courts, including this one, have repeatedly recognized as much, citing those factors as grounds for reducing sentences and transferring "non-violent first-time offender[s]" to home confinement. *See, e.g., Macfarlane*, No. 1:19-cr-10131-NMG, Dkt. No. 352 (relying on "the COVID-19 pandemic and the national emergency declared by the President of the United States" as well as "the particular risk of infection and transmission risk in penitentiary facilities" to find "extraordinary and compelling circumstances" warranting a reduction in sentence); *Grinis*, No. 1:18-cr-10206-NMG, Dkt. No. 162 (same). Indeed, the situation has steadily worsened since the time of those decisions, with the numbers of COVID-19 cases and deaths escalating nationally, in California, and in the prison system. *See, e.g.,* Trach Decl., Exh. H (CDC website reporting over 22 million cases and 379,255 deaths nationwide as of 1/13/21); *id.* (over 2.7 million cases and 30,513 deaths in California); Exh. I (BOP website reporting at least 7,000 currently active cases and 193 deaths among federal inmates and BOP staff members nationwide).

9

As noted above, near the outset of the pandemic Attorney General Barr issued a memorandum titled "Prioritization of Home Confinement as Appropriate in Response to COVID-19 Pandemic" for the stated purpose of "ensur[ing] that we utilize home confinement, where appropriate, to protect the health and safety of BOP personnel and the people in our custody." Trach Decl., Exh. A (3/26/20 Barr Memo), at 1. The memorandum included a "non-exhaustive list of discretionary factors" that BOP was directed to use to "assess[] which inmates should be granted home confinement." *Id.* Applying the factors to Mr. Giannulli further demonstrate his suitability for home confinement, particularly in light of the extraordinary circumstances of his imprisonment described above.

*First*, Mr. Giannulli's "age and vulnerability" to COVID-19, based on guidance from the Centers for Disease Control and Prevention ("CDC"), weighs in favor of his transfer to home confinement. *Id.* Mr. Giannulli is 57 years old. According to the CDC, the "risk for severe illness with COVID-19 increases with age, with older adults at highest risk." *See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html*. More specifically, an individual in Mr. Giannulli's age range (50-64) who contracts COVID-19 is four times as likely to need hospitalization and 30 times more likely to die, than the CDC's "comparison group" of 18-29 year-olds. *Id.*[3]

*Second*, "inmates residing in low and minimum security facilities" are to be given "priority" in home confinement determinations. Trach Decl., Exh. A (3/26/20 Barr Memo), at 2. Mr. Giannulli was assigned to the minimum security satellite camp at USP Lompoc. As detailed

---

[3] It bears noting that Mr. Giannulli tested positive for COVID-19 in October 2020, prior to his imprisonment. Trach Decl., Exh. E. Nevertheless, he remains at risk as the CDC notes that "cases of reinfection with COVID-19 have been reported" and recommends that all individuals take the same steps to protect themselves from the virus "whether you have had COVID-19 or not." *See https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html*.

10

above, he was held in the adjacent medium security penitentiary in solitary quarantine, but has now been transferred to the minimum security camp.  This factor weighs in favor of transfer to home confinement.

*Third*, Mr. Giannulli has not incurred any BOP violations, engaged in any misconduct (violent or otherwise), or done anything while incarcerated that would result in a PATTERN score above the minimum.  *See id.* at 2.  Thus, all of these factors favor transfer to home confinement.

*Fourth*, Mr. Giannulli has a "verifiable release plan" to support home confinement.  He has a stable home environment—to which he will directly and immediately travel upon release— with resources that will allow him to quarantine safely and remain at home for the remainder of his sentence.

*Finally*, Mr. Giannulli's crimes of conviction were conspiracy to commit mail and wire fraud and honest services mail and wire fraud and do not include any allegations of any "sex offense" or violent acts.  *See* Trach Decl., Exh. A (3/26/20 Barr Memo), at 2; *see also* Dkt. No. 1493.

In short, Mr. Giannulli satisfies all of the criteria for home confinement identified by Attorney General Barr:  he is a non-violent, 57-year old man with no prior criminal record assigned to a minimum-security facility who poses no risk to his community.  These facts, taken together with the extraordinary circumstances of his extensive period confined in solitary quarantine, warrant the requested reduction in his sentence and transfer to home confinement, as illustrated by this Court's finding in *Macfarlane* that

> in light of 1) the COVID-19 pandemic and the national emergency declared by the President of the United States; 2) the particular risk of infection and transmission risk in penitentiary facilities; 3) the fact that the defendant is a non-violent first-time offender who does not pose a danger to the community; and 4) the fact that he has been . . . subject to a quarantine in solitary confinement at a higher

>  security facility, there exist extraordinary and compelling circumstances which warrant a reduction in [the defendant's] sentence.

*Macfarlane*, No. 1:19-cr-10131-NMG, Dkt. No. 352, at 3; *see also Grinis*, No. 1:18-cr-10206-NMG, Dkt. No. 162, at 3.

## V. REQUESTED RELIEF

For all of the foregoing reasons, Mr. Giannulli respectfully moves the Court for an order modifying his term of imprisonment by ordering that he be released from the custody of the Bureau of Prisons and serve the remaining portion of his prison sentence in home confinement. Upon his release, Mr. Giannulli will travel directly from USP Lompoc to his residence in Los Angeles, California to commence his home confinement.[4]

Dated: January 14, 2021

Respectfully submitted,

*/s/ William J. Trach*
William J. Trach (BBO #661401)
LATHAM & WATKINS LLP
200 Clarendon Street
Boston, MA 02116
Phone: 617.948.6000
william.trach@lw.com

Sean M. Berkowitz (*admitted pro hac vice*)
LATHAM & WATKINS LLP
330 North Wabash Avenue
Suite 2800
Chicago, IL 60611
Phone: 312.777.7700
Fax: 312.993.9767
sean.berkowitz@lw.com

Perry J. Viscounty (*admitted pro hac vice*)
Allison S. Blanco (*admitted pro hac vice*)
LATHAM & WATKINS LLP
650 Town Center Drive
20th Floor
Costa Mesa, CA 92626
Phone: 714.540.1235
perry.viscounty@lw.com
allison.blanco@lw.com

Roman Martinez (*admitted pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004
Phone: 202.637.2200
roman.martinez@lw.com

---

[4] Mr. Giannulli should not be required to complete a two-week exit quarantine at USP Lompoc prior to release, as he will travel directly home and quarantine there upon arrival.

George W. Vien (BBO #547411)
Joshua N. Ruby (BBO #679113)
DONNELLY, CONROY & GELHAAR, LLP
260 Franklin Street, Suite 1600
Boston, MA 02110
Phone: 617.720.2880
Fax: 617.720.3554
gwv@dcglaw.com
jnr@dcglaw.com

*Counsel for Mossimo Giannulli*

## CERTIFICATE OF SERVICE

I certify that the foregoing document, which was filed with the Court through the CM/ECF system, will be sent electronically to all registered participants as identified on the Notice of Electronic Filing and that paper copies will be sent to those identified as non-registered participants.

*/s/ William J. Trach*
William J. Trach