# EXHIBIT D



Nathan F. Garrett
ngarrett@gravesgarrett.com
Direct Dial: (816) 285-3052

Matthew G. Whitaker
mwhitaker@gravesgarrett.com
Direct Dial: (515) 778-8569

November 19, 2020

**Via Electronic and Regular Mail**

FCC Lompoc
Federal Correctional Institute
3600 Guard Road
Lompoc, CA 93436
LOX-ExecAssistant@bop.gov

Mr. Ken Hyle
Federal Bureau of Prisons
General Counsel, Western Regional Office
7338 Shoreline Drive
Stockton, CA  95219

  Re: Mossimo Gianulli, Register No. 77808-112
     Request for Immediate Transfer to Home Confinement Pursuant to CARES Act, and Recent Attorney General and Bureau of Prison Directives.

Dear Warden and Regional Counsel Hyle,

  I am writing regarding my client Mossimo Gianulli, an inmate at the minimum-security camp at Lompoc FCC. We write to request that the Bureau of Prisons ("BOP") immediately transfer Mr. Gianulli to home confinement to serve the remainder of his sentence in accordance with Attorney General William Barr's directives to the BOP on March 26 and April 3, 2020; BOP Assistant Director Hugh Hurwitz's guidance of April 22, 2020; and, in accordance with the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), enacted on March 27, 2020.

  As discussed in detail below, Mr. Gianulli meets the criteria outlined in Attorney General Barr and Assistant Director Hurwitz's directives, and it is imperative that he be processed for an immediate transfer to serve the remainder of his five-month sentence in home confinement. He poses no risk of danger to the public (he is a first-time, nonviolent offender). He is housed in a minimum-security facility and is at the minimum risk of recidivism. Additionally, he has a verifiable release



FCC Lompoc
November 19, 2020
Page **2** of **7**

plan. Allowing him to serve the rest of his sentence confined to his residence will still serve the federal interest.[1]

In support of this request, we offer the following.

### I.   Background

As of November 18, 2020, there are 3,247 federal inmates and 1,162 BOP staff with confirmed cases of COVID-19.[2] According to the BOP, there have been at least 126 federal inmate deaths and 2 BOP staff member deaths attributed to COVID-19. Moreover, testing kits are not widely available. When a state prison in Ohio recently became able to test inmates, they found that 78% of the inmates were infected.[3]

The BOP reports that there are at least two (2) inmates at FCC Lompoc who are confirmed to have COVID-19; an unknown number staff are currently positive for COVID-19. To date, 142 FCC Lompoc inmates have contracted COVID-19.[4] In June, the *Lompoc Record* reported that "nearly all inmates at Lompoc FCI tested positive for coronavirus," leading to a "rampant spread of the virus inside the facility."[5] The numbers of infections are likely drastically higher due to insignificant testing and the prevalence of pending test results.[6]

As you are aware, Lompoc prison officials last month were ordered by U.S. District Court Judge Consuelo Marshall to expedite the evaluation of more than 120 inmates deemed eligible for home confinement due to their risks of COVID-19. In addition to the 129 inmates found to be eligible for home confinement, about 100 more were assigned to residential reentry center halfway houses, 81 received compassionate releases and some were released after completing their sentences.

The risk to Mr. Gianulli is very real. As of today, there are 11.5 million confirmed cases of COVID-19 in the United States, resulting in 250,652 deaths. In

---

[1] FCC Lompoc is a medium-security federal prison; Mr. Gianulli has no history of institutional discipline in custody; and Mr. Gianulli pled guilty to a wholly non-violent offense and he poses no danger to the community.
[2] https://www.bop.gov/coronavirus/
[3] *See* Time Magazine, April 22, 2020, "Ohio Began Mass Testing Incarcerated People for COVID-19. The Results Paint a Bleak Picture for the U.S. Prison System."
[4] https://www.prisonlegalnews.org/news/2020/aug/1/coronavirus-prison-cruel-reality/
[5] *The Lompoc Record*, June 5, 2020, available at https://lompocrecord.com/news/local/crime-and-courts/nearly-all-inmates-at-lompoc-fci-tested-positive-for-coronavirus-most-asymptomatic/article_f3fb06d7-f231-52b3-8f89-f21f11b73974.html
[6] https://www.bop.gov/coronavirus/



FCC Lompoc
November 19, 2020
Page 3 of 7

California, where Mr. Gianulli is serving his sentence, there are 1,047,789 positive cases and a total of 18,360 deaths.[7] Santa Barbara County, California, where FCC Lompoc is located, reports more than 10,597 COVID cases and 133 deaths.[8]

Citing the challenging situation of the "pandemic currently sweeping across the globe," Attorney General Barr on March 26, 2020 directed the BOP to ensure home confinement is considered for "some at-risk inmates who are non-violent and pose minimal likelihood of recidivism and who might be safer serving their sentences in home confinement rather than in BOP facilities."[9] In a second memo issued on April 3, 2020, emphasizing that "time is of the essence," Attorney General Barr directed the BOP to "immediately review all inmates who have COVID-19 risk factors, as established by the CDC" and "to immediately process" for transfer and then "immediately transfer" all inmates whom the BOP deems suitable candidates for home confinement.[10]

Following the release of the Barr memos, BOP has placed 8,018 inmates on home confinement, prioritizing inmates at minimum or low security institutions such as FCC Lompoc where Mr. Gianulli is placed.[11]

## II.  Guiding Criteria for Transfer to Home Confinement

Recognizing the urgency of protecting federal inmates from the spread of the COVID-19 pandemic, the Barr Memorandum directed the BOP to prioritize the use of its "various statutory authorities to grant home confinement for inmates seeking transfer in connection with the ongoing COVID-19 pandemic." Attorney General Barr also provided a non-exhaustive list of discretionary factors that the BOP may consider in assessing which inmates should be granted home confinement. He identified the following non- exhaustive list of discretionary factors to consider:

---

[7] California State COVID Dashboard, updated November 19, 2020, *available at* https://public.tableau.com/views/COVID-19CasesDashboard_15931020425010/Cases?:embed=y&:showVizHome=no
[8] *Id.*, county-by-county results.
[9] Barr Memorandum, *supra* n. 1, at 1.
[10] April 3 Memorandum at 2. Although the Attorney General originally contemplated a 14-day quarantine for inmates being transferred to home confinement, he authorized BOP to release inmates directly to home confinement where appropriate.
[11] https://www.bop.gov/coronavirus/faq.jsp ("Since the release of the Attorney General's original memo to the Bureau of Prisons on March 26, 2020 instructing us to prioritize home confinement as an appropriate response to the COVID-19 pandemic, the BOP has placed 7,796 inmates on home confinement.").



- The age and vulnerability of the inmate to COVID-19, in accordance with the Centers for Disease Control and Prevention guidelines;
- The security level of the facility currently holding the inmate, with priority given to inmates residing in low and minimum-security facilities;
- The inmate's conduct in prison, with inmates who have engaged in violent or gang- related activity in prison or who have incurred a BOP violation within the last year not receiving priority treatment;
- The inmate's score under PATTERN, with inmates who have anything above a minimum score not receiving priority treatment;
- Whether the inmate has a demonstrated and verifiable re-entry plan that will prevent recidivism and maximize public safety, including verification that the conditions under which the inmate would be confined upon release would present a lower risk of contracting COVID-19 than the inmate would face in his or her BOP facility;
- The inmate's crime of conviction, and assessment of the danger posed by the inmate to the community.

Following the enactment of the CARES Act, which broadened the authority of the Attorney General and the Director of the BOP during the COVID-19 crisis to release prisoners to home confinement, Attorney General Barr issued another memorandum to the BOP on April 3, 2020 in the wake of outbreaks of COVID-19 at BOP facilities. The April 3 Memorandum made a finding that "emergency conditions are materially affecting the functioning of the Bureau of Prisons." Such a finding now permits the Director of the BOP to "lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement" under 18 U.S.C. § 3624(c)(2). CARES Act, H.R. 748, 116th Cong. (2020).

On April 22, 2020, BOP Assistant Director Hugh Hurwitz issued a Memorandum for Chief Executive Officers that provided additional guidance for evaluating the factors identified Attorney General Barr's March 26, 2020 memo. In that memo, AD Hurwitz directed BOP to assess the following factors when considering an inmate for transfer to home confinement:

- Reviewing the inmate's institutional discipline history for the last twelve months;
- Ensuring the inmate has a verifiable release plan;
- Verifying the inmate's primary or prior offense history does not include violence, a sex offense, or terrorism related;
- Confirming the inmate does not have a current detainer;



FCC Lompoc
November 19, 2020
Page 5 of 7

- Reviewing the security level of the facility currently housing the inmate, with priority given to inmates residing in Low and Minimum security facilities;
- Reviewing the inmate's score under PATTERN, with inmates who have anything above a minimum score not receiving priority treatment;
- Reviewing the age and vulnerability of the inmate to COVID-19, in accordance with the CDC guidelines.

### III. Mr. Gianulli Meets the Criteria for Transfer to Home Confinement

All the factors set forth in Attorney General Barr's Memos and Assistant Director Hugh Hurwitz's April 22 memo favor transferring Mr. Gianulli to home confinement immediately. In fact, Mr. Gianulli is exactly the candidate described by General Barr as suitable for home confinement: he is a non-violent, 57-year old man with no prior criminal record housed in a minimum-security facility who poses zero likelihood of danger to the community and minimal, if any, risk of recidivism.[12] Mr. Gianulli would certainly be safer serving his five-month sentence in home confinement rather than risking exposure for such a short duration in a BOP facility that has seen scores of COVID cases over the preceding months.

Finally, Mr. Gianulli has a verifiable release plan with necessary elements that support home confinement.

In light of the risk to his health and the imperatives laid out by the Attorney General and BOP officials, we respectfully submit that the BOP should use its discretion to transfer Mr. Gianulli to home confinement immediately. Such a transfer may save his life, and at the same time the federal interest will still be protected – he will still serve out the rest of his sentence in confinement, thereby paying his debt to society.

### IV. Mr. Gianulli is Eligible for An Immediate Transfer to Home Confinement

---

[12] See *United States v. Germosen*, 473 F. Supp. 2d 221, 227 (D. Mass. 2007) ("Minimal or no prior involvement with the criminal justice system is a powerful predictor of a reduced likelihood of recidivism.") (*citing* U.S. SENT'G COMM'N, A COMPARISON OF THE FED. SENT'G GUIDELINES CRIM. HISTORY CATEGORY AND THE U.S. PAROLE COMM'N SALIENT FACTOR SCORE 15 (Jan. 4, 2005), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2005/20050104_Recidivism_Salient_Factor_Computation.pdf).


Although Mr. Gianulli has not yet served 25% of his sentence, the BOP is authorized to release him prior to that point, and it should do so because of the uniquely difficult situation of having to quarantine inmates in a stand-alone camp without traditional holding cells. Given the short duration of Mr. Gianulli's sentence (5 months), he will reach the 25% mark soon. Nevertheless, there is nothing to be gained by waiting until then, particularly when Mr. Gianulli is currently occupying space BOP may soon need to house new self-surrenders ineligible for early release.

For similar reasons, there is no need to impose an outgoing lock-down quarantine as a condition of releasing Mr. Gianulli to home confinement. In his April 3, 2020 Memorandum, Attorney General Barr gave BOP discretion to release of inmates directly to home confinement, where appropriate, without an outgoing quarantine at a BOP facility. That is warranted in this case because of the unusually difficult circumstances of quarantining inmates at FCC Lompoc, and because Mr. Gianulli has the ability to self-quarantine safely in his home.

The COVID-19 pandemic has placed tremendous strain on the BOP and its staff as they struggle to keep inmates safe and healthy. We realize that BOP and its staff are at just as grave a risk as your inmates and applaud the Bureau for its efforts to navigate this difficult situation.

Attorney General Barr's and AD Hurwitz's recent directives underlie the urgency with which the BOP must act to protect the health and well-being of staff and at-risk inmates. Indeed, the BOP has taken aggressive measures to release thousands of inmates to home confinement consistent with the Attorney General's directives. It should do so in this case. To quote the Attorney General, "time is of the essence."

Please confirm your receipt of this request and notify us immediately if it needs to be directed to another point of contact within the Bureau of Prisons. Should you have any questions about any of the above, or require any further information please reach out to me. I can be reached at (816) 285-3052 or via NGarrett@GravesGarrett.com at your convenience.

Thank you in advance for your prompt consideration of this request.



Sincerely,

Nathan F. Garrett

Cc: Federal Bureau of Prisons
320 First St., NW
Washington, DC 20534