# EXHIBIT  G

1                          UNITED STATES DISTRICT COURT
                            DISTRICT OF MASSACHUSETTS
2

3     UNITED STATES OF AMERICA,            )
                                           )
4                        Plaintiff         )
                                           )   No 1-19-cr-10080-NMG-8
5     vs.                                  )
                                           )
6     MOSSIMO GIANNULLI,                   )
                                           )
7                        Defendant.        )
                                           )
8                                          )

9

10

            BEFORE THE HONORABLE NATHANIEL M. GORTON
11                   UNITED STATES DISTRICT JUDGE
                              Sentencing
12

13

14

15          John Joseph Moakley United States Courthouse
                          Courtroom No. 4
16                       One Courthouse Way
                    Boston, Massachusetts 02210
17

18                        August 21, 2020
                             11:01 a.m.
19

20

21              Kristin M. Kelley, RPR, CRR
                     Official Court Reporter
22          John Joseph Moakley United States Courthouse
                    One Courthouse Way, Room 3209
23                  Boston, Massachusetts 02210
                    E-mail: kmob929@gmail.com
24
            Mechanical Steno - Computer-Aided Transcript
25

```
 1    APPEARANCES:

 2

 3    ON BEHALF OF THE GOVERNMENT:

 4              OFFICE OF THE UNITED STATES ATTORNEY

 5                   By:  Kristen A. Kearney, AUSA

 6                   Eric S. Rosen, AUSA

 7                   Justin D. O'Connell, AUSA

 8         One Courthouse Way

 9         Boston, Massachusetts 02210

10

11    ON BEHALF OF THE DEFENDANT MOSSIMO GIANNULLI:

12

13         LATHAM & WATKINS, LLP

14              BY: Sean M. Berkowitz

15              Allison S. Blanco

16              Perry J. Viscounty

17         330 North Wabash Avenue, Suite 2800

18         Chicago, IL 60611

19

20         LATHAM & WATKINS, LLP

21              BY: William J. Trach

22         John Hancock Tower, 27th Floor

23         200 Clarendon Street

24         Boston, MA 02116

25
```

1  APPEARANCES CONTINUED:

2

3          DONNELLY, CONROY & GELHAAR, LLP

4              BY: George W. Vien

5          260 Franklin Street

6          Boston, MA 02110

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

<pre>
  1                    P R O C E E D I N G S
  2              (The Honorable Court entered the videoconference at
  3       11:01 a.m.)
  4              THE CLERK:  This is Criminal Action No. 1910080, the
  5       United States of America versus Mossimo Giannulli.
  6              Will counsel please identify themselves for the
  7       record.
  8              MS. KEARNEY:  Good morning, your Honor.  Kristen
  9       Kearney for the government.
11:01 10       THE COURT:  Good morning, Ms. Kearney.
 11              MR. BERKOWITZ:  Sean Berkowitz and Allison Blanco for
 12       Mr. Giannulli.
 13              THE COURT:  If that was Mr. Berkowitz, we have an
 14       audio problem.
 15              MR. BERKOWITZ:  Okay, Judge.  Let me see what we can
 16       do about that.  Judge, is that better?
 17              THE COURT:  That is better.  Is it Mr. Berkowitz?
 18              MR. BERKOWITZ:  Mr. Berkowitz and Ms. Blanco on behalf
 19       of Mr. Giannulli.
11:02 20       THE COURT:  All right.  We are still having a little
 21       bit of difficulty with hearing you, Mr. Berkowitz.  If you can
 22       maybe move closer to the microphone, it might help.
 23              MR. BERKOWITZ:  Your Honor, can you hear me better
 24       now?
 25              THE COURT:  Yes.
</pre>

1          MR. BERKOWITZ:  Very good.

2          THE COURT:  All right.  Good morning to you,

3    Mr. Berkowitz.  We also have Ms. Victoria from the Probation

4    Office who is joining this meeting.

5          Before we start, I need to note for the record that we

6    are proceeding today with a sentencing hearing by Zoom pursuant

7    to General Order of this court, the National Emergency Act, and

8    the so-called CARES Act, which was recently enacted by

9    Congress.  These regulations relate to the coronavirus pandemic

11:03 10    and authorize, under certain circumstances such as these, the

11    conduct of criminal proceedings by means of videoconferencing.

12          As the presiding judge, I am satisfied that we should

13    proceed this way because both the government and the Defendant

14    have requested to go forward with this sentencing hearing and

15    believe that this is a matter of importance.  In the interest

16    of justice, it ought not be delayed.  That leaves only the

17    Defendant's consent to go forward by videoconference to be

18    determined.

19          Mr. Giannulli, do you understand what I have just said

11:04 20    about proceeding with this sentencing by videoconference?

21          THE DEFENDANT:  Yes, sir.  I do.

22          THE COURT:  Have you discussed with your attorney your

23    right to consent or not to consent to proceed in this fashion?

24          THE DEFENDANT:  Yes, sir.  I have.

25          THE COURT:  Do you now, in open court, consent to

1    proceed with your sentencing by videoconference?

2         THE DEFENDANT:  Yes, sir.

3         THE COURT:  All right.  I declare then that the

4    Defendant has consented to go forward by videoconferencing and

5    that, in the interest of justice, this sentencing hearing ought

6    not be delayed, thus we are going to go forward using this new

7    Zoom technology.  This is still a public hearing and these

8    proceedings are being made available to members of the public,

9    the press, and interested parties via Zoom technology.  Those

11:05 10   attendees are not, of course, permitted to participate in any

11   other way in these proceedings.

12         I also remind all of you who are attending this

13   videoconference that Federal Rule of Criminal Proceeding 53 and

14   local Rule 83.3 prohibit photographing, recording and

15   broadcasting this proceeding, and any violation of these rules

16   will subject the wrongdoer to sanctions and/or loss of press

17   privileges.

18         So we will now proceed with the sentencing.  I have

19   received and read the Presentence Report submitted to me by the

11:05 20   Probation Officer and the government's consolidated Sentencing

21   Memorandum.  Those are the only writings I received in this

22   regard.  Is there anything that I haven't mentioned that I

23   should have received?  Ms. Kearney?

24         MS. KEARNEY:  Nothing else from the government, your

25   Honor.

1          THE COURT:  Mr. Berkowitz?

2          MR. BERKOWITZ:  Nothing on behalf of Mr. Giannulli,

3     your Honor.

4          THE COURT:  All right.  Then before we begin I will

5     inform counsel that, after having carefully considered the

6     Presentence Report, I accept the so-called C plea that has been

7     agreed to by Mr. Giannulli and the government.  That is because

8     I conclude that the agreed upon sentence, including 5 months

9     imprisonment, 3 years of supervised release, 250 hours of

11:06 10    community service and a fine of $250,000 is sufficient, but not

11    greater than necessary, punishment under the circumstances.

12    We, nevertheless, need to make certain findings for the record

13    at this sentencing hearing, but there is no mystery about the

14    outcome.

15          Proceeding, I understand there were two objections to

16    the presentence report by the government, none by the

17    Defendant.  Am I correct in that?  Ms. Kearney?

18          MS. KEARNEY:  Yes, your Honor.

19          THE COURT:  Mr. Berkowitz?

11:07 20    MR. BERKOWITZ:  Yes, your Honor.

21          THE COURT:  The government's first objection was a

22    matter that was taken care of by the Probation Officer.  The

23    second was the usual objection that the Court has dealt with on

24    numerous occasions before now with respect to the appropriate

25    guideline sections to be used in connection with this sentence

1    and the calculation of the loss.

2              With respect to government's objection No. 2, does the

3    government wish to supplement it in any way?  Ms. Kearney?

4              MS. KEARNEY:  No, your Honor.  We'll rely on our

5    papers.

6              THE COURT:  All right.  And I take it the Defendant

7    does not wish to address this issue?  Mr. Berkowitz?

8              MR. BERKOWITZ:  That is correct, your Honor.

9              THE COURT:  All right.  With respect to the

11:08 10   government's objection No. 2, as I have ruled several times

11   before, this session has determined that the fraud deceit

12   guideline, that is Section 2B1.1, is applicable and not the

13   commercial bribery guideline, Section 2B4.1, and that there is

14   no specific loss or gain to be applied under the fraud

15   guideline.  That is not to say that no loss was incurred at all

16   as a result of the fraudulent, deceitful and criminal conduct

17   of these defendants.  Although I perceive no specific

18   calculable financial loss to the University of Southern

19   California, there certainly was a loss to the overall

11:09 20   educational system in this country when Mr. Giannulli and

21   Ms. Loughlin systematically hired Mr. Singer twice to bribe

22   their daughters' way into college, but the monetary value of

23   the harm they caused is indeterminable, therefore the

24   government's objection No. 2 is overruled.

25              I take it there are no other unresolved objections to

1    the Presentence Report.  Am I correct, Ms. Kearney?

2              MS. KEARNEY:  Yes.

3              THE COURT:  Mr. Berkowitz?

4              MR. BERKOWITZ:  Correct.

5              THE COURT:  Then we need to turn to establishing the

6    appropriate guidelines in this case.  Recommendations in that

7    regard are made for me by the Probation Office started at

8    page 40 of the Presentence Report wherein I'm advised that the

9    2018 Guideline Manual, that is the most recent manual, applies,

11:10 10   and within that we start with the conspiracy guideline.  That

11   is 2X1.1.  That provides, in turn, that the base offense level

12   is the base offense level for the guideline for the substantive

13   offense.  In this case, that's mail and wire fraud and honest

14   services mail and wire fraud, and it's Section 2B1.1 that

15   applies.  Because the offense and conviction has a maximum

16   statutory term of imprisonment of 20 years or more, the base

17   offense level is 7 under that guideline section, subhead

18   (A)(1).

19             Do counsel agree with that recommendation?

11:10 20   Ms. Kearney?

21             MS. KEARNEY:  Subject to our objection regarding the

22   applicable guideline, we agree, yes, your Honor.

23             THE COURT:  Mr. Berkowitz?

24             MR. BERKOWITZ:  We agree on behalf of Mr. Giannulli,

25   your Honor.

1          THE COURT:  All right.  There are no adjustments for

2    role in the offense, therefore the adjusted offense level is 7.

3    The Defendant is entitled to a two-level downward adjustment

4    for his acceptance of responsibility, therefore ends up with a

5    total offense level of 5.

6          Turning to the Defendant's criminal history, there are

7    no prior convictions, therefore he falls in Criminal History

8    Category I and, therefore, that means the guideline range is as

9    previously understood, 0 to 6 months.

11:11 10          Now, this is a C plea, as I understand it, and this

11    has already been agreed to, but I need to hear formal

12    recommendation for sentencing.

13          We'll start with the government, Ms. Kearney.

14    MS. KEARNEY:  Thank you, your Honor.  By now the Court

15    is familiar with the facts of this case, and I want to take a

16    moment to highlight three factors demonstrating why a sentence

17    of 5 months imprisonment is appropriate here.

18          First, Giannulli's conduct in this case evidences a

19    complete disregard for right and wrong.  He understood from the

11:12 20    beginning that he was scheming the system to get his daughters

21    into U.S.C. with outsiders, that he didn't need to pursue

22    legitimate routes for admission, and that what he was doing was

23    wrong, yet he went ahead with the scheme not once but twice.

24          For example, the Defendant, in his own words, blew off

25    the U.S.C. development officer who offered to flag his older

daughter's application.  The Defendant did not even pretend to pursue this legitimate course because he had already arranged for his daughter's admission through Singer's fraudulent scheme.

When he was setting up a meeting with U.S.C.'s former athletic director, Giannulli understood he shouldn't say anything about his daughter's admission as a crew recruit and confirmed the same with Singer.  Then, within weeks of his older daughter's admission to U.S.C., he reengaged Singer to repeat the scheme for his younger daughter without a second thought.  And perhaps most brazenly, Giannulli had no problem looking his daughter's high school counselor in the eye and bluntly telling him his daughter was a coxswain when, of course, she was not.  This disrespect for right and wrong deserves a meaningful sentence of imprisonment.

Second, Giannulli, like Devin Sloane, Agustin Huneeus, Michelle Janavs, and Toby MacFarlane, who each received sentences in the 4 to 6-month range, exposed his daughters to the scheme and allowed them to become complicit in it.  Not only did he have them pose for pictures on a rowing machine, but he allowed them to be copied on e-mails about, for example, a coxswain profile and registering with the NCAA.  Giannulli also allowed Singer to encourage his younger daughter to keep her admission to U.S.C. hush hush.  And he and his wife coached their daughter on how not to draw attention about her elicit

1   admission with her high school counselor.

2         THE COURT:  Excuse me, Ms. Kearney.  May I just stop?

3   If you'll move a little closer to the microphone, you're

4   cutting out a little bit.

5         MS. KEARNEY:  Apologies, your Honor.

6         This kind of behavior is not simply over zealous

7   parenting, as the PSR notes that one person close to Giannulli

8   has suggested.  It is criminal and deserving of the proposed

9   five month sentence of imprisonment.

11:14 10       And, third, Giannulli's interactions with his

11  daughter's high school counselor demonstrate a privilege and

12  entitled attitude for which prison is the only leveler.  As an

13  example, when the high school counselor raised questions about

14  whether his younger daughter was really a coxswain, Giannulli

15  displayed his impudence by responding, quote, "Fuck him."  Nor

16  did he have any problem confronting the counselor.

17  Contemporaneous notes reflect that Giannulli was acting, quote,

18  aggressively, and made the counselor, quote, visibly nervous.

19  Giannulli went as far as to blame the counselor and suggested

11:15 20  that he, the counselor, was the one in the wrong when Giannulli

21  knew full well that he had arranged for his daughter's

22  fraudulent admission.

23        Most tellingly, in his confrontation with the

24  counselor, Giannulli had the audacity to tell the counselor

25  that he knows lots of people and had a lot done for him.  In

1  other words, he was essentially asking the counselor, don't you

2  know who I am.

3       A meaningful period of incarceration is necessary to

4  make clear to this Defendant that he is not above the law.  For

5  these reasons, as well as those outlined in the government's

6  Sentencing Memorandum, the government recommends that the Court

7  accept the plea, the terms of Giannulli's plea agreement, and

8  sentence him to 5 months of imprisonment, a fine of $250,000,

9  and 24 months of supervised release with 250 hours of community

11:16 10  service.  Thank you.

11       THE COURT:  Thank you, Ms. Kearney.

12       Mr. Berkowitz?

13       MR. BERKOWITZ:  Thank you, your Honor.  The government

14  and the defense negotiated this plea agreement in good faith

15  and at arm's length, both believing that a sentence of 5 months

16  is sufficient, but not greater than necessary, in this case.

17  It's an appropriate sentence when you balance Mr. Giannulli's

18  life with the crime that he has been convicted of, your Honor.

19       Your job is to sentence individuals as well as crimes.

11:16 20  I think there's been a lot about the crime discussed here and

21  Mr. Giannulli, Moss I'm going to call him, who I proudly

22  represent, is not above the law.  He sits here today humbled

23  and he is before you accepting the sentence that you're going

24  to impose.

25       I would not be doing my job if I didn't provide some

additional context that I think is for you to better understand
who the man is that you're going to be sentencing today.

Moss was born into a working class family in
Los Angeles.  He's 57 years old.  His father was a landscape
architect and his mother was a homemaker.  Moss graduated with
a high school diploma in 1981 and attended one semester at
Orange Coast College before leaving to start his own clothing
apparel business.  He met and married Ms. Loughlin, who you
will be sentencing later today, in 1995.  The two married and
have two children.  Moss also has a son from a previous
marriage.

He has worked incredibly hard to achieve success in
the fashion industry, your Honor.  He has consistently given
back, recognizing that he is privileged, and he has given back
in charitable donations, both to educational institutions as
well as dozens of other charitable institutions.

He is fiercely devoted to his children.  He's always
had close relationships with both his daughters and his son.
He's tried over the years and his life to be a positive role
model for them, instilling in them a work ethic and
self-confidence which is evident in the accomplishments of his
children.

As important and fulfilling as his career has been,
your Honor, Moss's top priority was, is and always will be his
children.  I say that not to excuse the conduct, your Honor.

1    We are here accepting full responsibility, but I say it to

2    provide context for the mistakes and the criminal decisions

3    that Moss made, because we believe that this contextualizes

4    what are out of character choices that were made.  It also puts

5    into context the overwhelming toll that this case has taken on

6    him and his family.

7         In addition to those issues, your Honor,

8    Mr. Giannulli, Moss, lost his father in early 2019 to heart

9    disease and his mother passed after he was arrested in this

11:19 10   matter last year after battling cancer.

11        I'm going to talk a little bit about the nature of the

12   offense and the consequences of the offense, your Honor,

13   because I do think that what you've heard from the government,

14   while accurate, I want to make sure there's a fuller picture of

15   what happened.

16        Mr. Giannulli did not attend or graduate from college.

17   He and his wife needed assistance in order to help navigate the

18   process.  They went to Mark Hauser, who was the chair of the

19   board of trustees of his children's school.  Mr. Hauser

11:19 20   recommended Rick Singer to them as a renowned college counselor

21   who would help guide them through the process and work with

22   their daughters.  At the time, he was not presented as a felon

23   or a huckster or a fraud.  He was presented both by Mr. Hauser,

24   as well as generally in the public, as a reputable college

25   counselor, a published author, and someone who had successfully

1    helped young people prepare for college.

2         And that was in May of 2015.  For close to a year,

3    that's exactly what he did for the family.  He provided the

4    daughters with tutoring.  He provided them assistance as they

5    wrote their personal statements.  He recommended

6    extracurricular business programs, and he offered other support

7    and advice and was very close to the family in doing those type

8    of things.

9         It wasn't until April of 2016, almost a year later,

11:20 10   that Mr. Singer first suggested the "side door" that you've

11   heard about.  I want to be really clear that never did

12   Mr. Singer suggest to Moss or his family that his daughters

13   cheat on their tests.  In fact, both daughters achieved strong

14   grades as well as strong test scores and got into several

15   colleges legitimately, your Honor.

16        Having said that, when Mr. Singer made the

17   recommendation of the "side door" which you've heard about,

18   Moss ignored alarm bells, he ignored red flags, and he went

19   ahead and even assisted by taking pictures, as you've heard.

11:21 20   So he accepts responsibility for those decisions, which were

21   wrong and which have caused untold consequences both for him

22   and the public at large.

23        I want to talk a little bit about -- we talked about

24   the pictures.  A couple of additional facts just to round out

25   the record, your Honor, neither Mr. Giannulli or his daughters

1    nor his wife saw the actual application that was submitted.  In

2    fact, the pictures that Mr. Giannulli took were never submitted

3    to U.S.C.  The money that was paid was paid.  He paid a

4    significant amount of money both directly to U.S.C. and to the

5    Key World Foundation.  No monies were ever paid directly to a

6    coach.

7         Having said that, and make no mistake, the mistakes

8    that Mr. Giannulli made were criminal, they were wrong, and he

9    should not have done what he did.  He regrets deeply bringing

11:22 10   his wife into the scheme.  He regrets deeply the consequences

11   that this has had for his family.  His children have been

12   bullied, both on social media and in person disproportionate to

13   other children in the scheme.  The family has been the face of

14   the crisis and the scandal in a way disproportionate to their

15   overall role.  You'll hear more about that this afternoon.

16        Your Honor, the time that Mr. Giannulli has had to

17   reflect on all of this really comes down to the harm that he's

18   caused his family, the terrible decisions that were made.  This

19   is a good man who made terrible mistakes that were criminal,

11:23 20   and he accepts full responsibility for those mistakes and

21   crimes.  He will work hard when he ends his sentence to rebuild

22   his reputation and make a positive impact on society.

23        When you balance, your Honor, who Mr. Giannulli is

24   with what he did, we're pleased that it sounds as if you agree

25   that a 5-month sentence of incarceration that the government

1  and Mr. Giannulli have agreed on is the appropriate sentence in
2  this case.  Thank you for your time.
3          THE COURT:  All right.  Thank you, Mr. Berkowitz.
4  Does the Defendant wish to address the Court before sentence is
5  imposed?
6          THE DEFENDANT:  I do.  Thank you, your Honor.  As Sean
7  said, I deeply regret the harm that my actions --
8          THE COURT:  Mr. Giannulli, please move closer to the
9  microphone.  Maybe you could change places with your attorney.
10 Thank you.
11         THE DEFENDANT:  Is this better?  Thank you, your
12 Honor.  I do deeply regret, as Sean said, the harm that my
13 actions have caused my daughters, my wife and others.  I take
14 full responsibility for my conduct.  I'm ready to accept the
15 consequences and move forward with the lessons I've learned
16 from this experience.  Thank you.
17         THE COURT:  All right.  Do counsel know of any reason
18 why sentence ought not to be imposed at this time?
19 Ms. Kearney?
20         MS. KEARNEY:  No.
21         THE COURT:  Mr. Berkowitz?
22         MR. BERKOWITZ:  No, your Honor.
23         THE COURT:  Mr. Giannulli, normally, if you were in
24 this courtroom, I would ask you to stand at this stage of the
25 proceeding.  That's because this is a solemn moment that I am

1    required to sentence somebody who is convicted of a federal

2    crime.

3         I never know where to begin when I sentence someone in

4    this college admissions scandal because it astonishes me every

5    time that I have to do it.  You have pled guilty and now stand

6    convicted of a crime motivated by hubris.  And that's defined

7    as wanton arrogance resulting from excessive pride.

8         That is not something which I usually am concerned

9    when I have to sentence a defendant in this courtroom.  I see

11:25 10   lots of drug dealers, gun runners, and people who have

11   committed violent crimes who have grown up without role models,

12   sometimes having been abused themselves, and living in squalid

13   conditions and who did not know better.

14        That's not so with you, Mr. Giannulli.  You grew up in

15   a stable, happy family.  In fact, you described your childhood

16   yourself as fantastic, the good life in Southern California.

17   You are an informed, smart, successful businessman.  You

18   certainly did know better and you helped sponsor a breathtaking

19   fraud on our system of education and involved your wife and

11:26 20   your two daughters in cheating and faking their way, ways, into

21   a prestigious university.

22        You are not stealing bread to feed your family.  You

23   have no excuse for your crime, and that makes it all the more

24   blameworthy.  If I have to send to jail those who commit crimes

25   yet did not know better, surely it is equitable that I send

1  you, who knew full well the criminality of your conduct, to

2  jail.  I need to do that not only as punishment and deterrence

3  for you, but also to dissuade and deter anyone else in your

4  position who thinks that because they have enough money to buy

5  anything they want, they can flout the law and buy their kids

6  entries into college.  That's not the way it works in this

7  country, as you are about to find out.

8       Pursuant to the Sentencing Reform Act of 1984 and

9  having considered the sentencing factors enumerated in Title 18

11:27 10  of the United States Code Section 3553(a), it is the judgment

11  of this Court that you, Mossimo Giannulli, are hereby committed

12  to the custody of the Bureau of Prisons to be imprisoned for a

13  term of 5 months.  Upon release of imprisonment, you shall be

14  placed on a term of supervised release for 2 years.  Within

15  72 hours of release from custody of the Bureau of Prisons, you

16  shall report in person to the district to which you are

17  released.

18       It is further ordered that you shall pay to the United

19  States a fine of $250,000.  It is further ordered that you

11:28 20  shall make a lump sum payment of $250,000, which is due within

21  60 days of this sentencing.

22       Any fine imposed is to continue to be paid until the

23  full amount, including any interest required by law, is paid.

24  All fine payments shall be made to the Clerk of the United

25  States District Court.  You are to notify the United States

1  Attorney for this district within 30 days of any change of

2  mailing or residence address that occurs while a portion of

3  that fine remains unpaid.

4         While under the Probation Office's supervision, you

5  are to comply with the following terms and conditions: First,

6  you shall not commit another federal, state or local crime.

7  You shall not unlawfully possess a controlled substance.  Drug

8  testing conditions are suspended based upon the Court's

9  determination that you pose no risk of substance abuse.

11:29 10        You are to comply with the standard conditions that

11  have been adopted by this Court and are described in the

12  Sentencing Guidelines at Section 5D1.3(c) and which will be set

13  forth in detail in the Judgment and Committal.

14         The following special conditions apply during your

15  supervised release: You must complete 250 hours of community

16  service at an agency approved by the Probation Office.  You

17  must pay the balance of any fine or restitution imposed to a

18  court ordered repayment schedule.  You are prohibited from

19  incurring new credit charges or opening additional lines of

11:30 20  credit without the approval of the Probation Office while any

21  financial obligation remains outstanding.  You are to provide

22  the Probation Office access to any requested financial

23  information which may be shared with the Financial Litigation

24  Unit of the United States Attorney's office.

25         It is further ordered that you shall pay to the United

1    States a Special Assessment of $100, which shall be due and

2    payable immediately.

3           Although you have waived most of your rights to

4    appeal, to the extent you have any right to appeal,

5    Mr. Giannulli, you must exercise that right within 14 days.  If

6    you cannot afford an attorney, an attorney will be appointed on

7    your behalf.  Do you understand that?

8           THE DEFENDANT:  I do, sir.

9           THE COURT:  Then it is further ordered that you are to

11:30 10  self-surrender at an institution designated by the Bureau of

11   Prisons 90 days from today, that is Thursday, November 19,

12   2020, before 2:00 p.m.

13          Is there any further business to come before the Court

14   in these proceedings?  Ms. Kearney?

15          MS. KEARNEY:  Yes, your Honor.  At this time, the

16   government moves to dismiss Counts 2 and 3 as to Mr. Giannulli.

17          THE COURT:  Counts 2 and 3 are dismissed.  Anything

18   else?

19          MS. KEARNEY:  No, your Honor.

11:31 20  THE COURT:  Mr. Berkowitz?

21          MR. BERKOWITZ:  Yes, your Honor.  We would ask that

22   you recommend to the Bureau of Prisons that the institution

23   that would be appropriate for surrender would be Lompoc in

24   California, recognizing it's ultimately up to the Bureau of

25   Prisons as to how to handle it.

1        THE COURT:  I will recommend that the Bureau of

2   Prisons refer or incarcerate Mr. Giannulli in a camp that's

3   close to his home, preferably Lompoc, but it will depend on the

4   security level which they believe is appropriate.  And that

5   will be my recommendation.

6        MR. BERKOWITZ:  Very much appreciated, your Honor.

7        THE COURT:  Is there any further business to come

8   before the Court in these proceedings?  Ms. Kearney?

9        MS. KEARNEY:  No.  Thank you, your Honor.

11:32  10        THE COURT:  Mr. Berkowitz?

11        MR. BERKOWITZ:  No, your Honor.

12        THE COURT:  Then we are adjourned.  Thank you.

13        (Whereupon, at 11:35 a.m. the sentencing concluded.)

14

15

16

17

18

19

20

21

22

23

24

25

1                          CERTIFICATE

2

3          I, Kristin M. Kelley, do hereby certify that the

4     foregoing record, Pages 1 through 23, is a complete, accurate

5     and true transcription of my stenographic notes taken in the

6     aforementioned matter to the best of my skill and ability.

7

8

9                         _____

10                        KRISTIN M. KELLEY

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25