UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>    v.<br><br>MOSSIMO GIANNULLI,<br>    Defendant. | No. 19-cr-10080-NMG-8 |

**GOVERNMENT'S OPPOSITION TO
DEFENDANT MOSSIMO GIANNULLI'S EMERGENCY MOTION
TO MODIFY HIS SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1) (Dkt. 1691)**

The government respectfully submits this opposition to defendant Mossimo Giannulli's motion to reduce his sentence. Giannulli contends that the measures taken by the Bureau of Prisons ("BOP") to protect him from the COVID-19 pandemic have been "far more extreme" than what the Court contemplated in imposing sentence, and that his sentence should, as a result, be reduced by more than half. In opposing Giannulli's motion, the government acknowledges that he spent an extended period in quarantine—from which he has now been released—due in part to the fact that he was exposed to other inmates with COVID-19, and in part to the fact that he complained of symptoms consistent with the virus. This possibility was not unforeseeable at the time Giannulli was sentenced, however, and it does not provide a basis to reduce the sentence that this Court concluded was just and appropriate.

**RELEVANT BACKGROUND**

**Giannulli's Sentence**

Giannulli pled guilty to one count of conspiracy to commit mail and wire fraud and honest services mail and wire fraud, in violation of 18 U.S.C. § 1349, in connection with his agreement to pay bribes totaling $500,000 to secure the admission of two of his children to the University of Southern California. *See* Dkt. 1241 (Rule 11 Hr'g Tr.). Giannulli negotiated a Rule 11(c)(1)(C)

plea with the government in which he agreed to a sentence of five months' imprisonment. In imposing that sentence, the Court noted that Giannulli was "not stealing bread to feed [his] family," and had "no excuse for [his] crime," which "makes it all the more blameworthy," adding: "If I have to send to jail those who commit crimes yet did not know better, surely, it is equitable that I send you, who knew full well the criminality of your conduct, to jail." Dkt. 1493 (Sentencing Tr.) at 19. At Giannulli's request, the Court recommended that he serve his sentence at USP Lompoc. *Id*. at 22-23.

**BOP's Responses to the COVID-19 Pandemic**

Mindful of the concerns created by the COVID pandemic, BOP has made extensive efforts to stop the spread of the virus in its facilities. The government has previously outlined these efforts in its responses to motions filed by Giannulli's co-defendants.[1] They include: (1) transferring more than 20,300 inmates to home confinement; (2) minimizing the number of people coming into BOP facilities to limit exposure points by suspending visitors, maximizing telework, and decreasing internal movement; and (3) substantially expanding COVID-19 testing capabilities to quickly isolate sick individuals. BOP also requires that all new inmates be tested for COVID-19 upon arrival and quarantined for 14 days before being introduced into the general population.[2]

At USP Lompoc, a unit in the main prison has been converted to a quarantine for all incoming inmates. While inmates in the same security level may be doubled-up in quarantine,

---

[1] *See* Gov't's Corrected Opp'n to the Mot'ns of Defs. Janavs and Hodge to Modify Their Sentences (Dkt. 1114) at 4-8; Gov't's Opp'n to the Mot'ns of Defs. Henriquez and Janavs to Modify Their Sentences (Dkt. 1286) at 5-7; Gov't's Opp'n to Def. Douglas Hodge's Mot'n for a Modification of His Sentence (Dkt. 1446) at 3-4; Gov't's Opp'n to Def. Elizabeth Henriquez's Mot'n to Modify Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (Dkt. 1485) at 3-4.

[2] *See* BOP, "Correcting Myths and Misinformation about BOP and COVID-19," *at* https://www.bop.gov/coronavirus/docs/correcting_myths_and_misinformation_bop_covid19.pdf (last accessed January 15, 2021).

Giannulli had a single cell for his entire quarantine. Like other quarantined inmates, to mitigate contact between potentially infected inmates, Giannulli's out-of-cell time was limited to three days per week to shower and use the phone and email. Despite such restrictions, he did have access to books, mail, a limited commissary, and television. Inmates in quarantine could also communicate through their cells with other inmates in the unit.

Giannulli's 14-day quarantine began when he arrived at USP Lompoc on November 19, 2020. He tested negative for COVID-19 upon arrival, and was tested again 14 days later. BOP received the results of Giannulli's second test on December 7, 2020. On that same day, however, five other inmates in the quarantine unit tested positive for the virus.[3] Four additional inmates tested positive the following day.[4] The inmates who tested positive were moved to the isolation unit, while the remaining inmates were kept in quarantine for an additional 14 days. During this time, the quarantined inmates received daily symptom, temperature, and pulse oximetry checks and additional COVID tests.

During this additional quarantine, Giannulli reported suffering a headache and the loss of his sense of smell, both symptoms of COVID-19. He was immediately moved to the isolation unit, where he stayed for 14 days and received additional COVID tests. There, he had access to books, mail, and a television, and could communicate with other inmates in isolation through their cells. Giannulli was tested again on January 11, 2021. The results came back negative on January 13, 2021, and he was released from isolation to the adjacent minimum security camp. At the camp, Giannulli can go outside anytime between 6 a.m. and 6 p.m., and can be outside his dormitory until 9 p.m.

---

[3] Four were recent transfers from USP-Victorville; the fifth had been quarantining in a cell next to one of the other positive inmates.

[4] Two had transferred from Victorville and two had been quarantining in the unit.

3


# ARGUMENT

Under 18 U.S.C. § 3582(c), a district court "may not" modify a term of imprisonment once imposed, except under limited circumstances. *See Dillon v. United States*, 560 U.S. 817, 824 (2010). One such circumstance is the so-called compassionate release provision, which provides that a district court "may reduce the term of imprisonment" if it finds "extraordinary and compelling circumstances warrant such a reduction," and that "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The Court must also consider the "factors set forth in section 3553(a) to the extent that they are applicable." *Id*. Giannulli has the burden of showing that circumstances warrant a modification of his sentence. *United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992).[5]

## I. There Are No Extraordinary and Compelling Reasons Warranting a Reduction in Giannulli's Sentence.

The government acknowledges that Giannulli spent an extended period in quarantine, and that the conditions of his confinement during that time were more onerous than they would have been at the camp to which BOP originally designated him. This possibility was not unforeseeable at the time he was sentenced, however, given the efforts BOP has taken to protect inmates from the pandemic. Indeed, other inmates have also experienced extended periods of quarantine. Such conditions, without more, do not constitute "extraordinary and compelling circumstances" for purposes of Section 3582(c)(1)(A)(i). *See, e.g.*, *United States v. Hodge*, No. 19-cr-10080-11 (Dkt.

---

[5] A motion under Section 3582(c)(1)(A) may be made either by BOP or a defendant, but in the latter case only "after the defendant has fully exhausted all administrative rights to appeal a failure of [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id*. Here, Giannulli submitted his request to the Warden of USP Lompoc on the day he reported to prison, and more than 30 days have passed since that time.

1501) (denying § 3582 motion where defendant cited "harsh prison conditions imposed to prevent" the spread of COVID-19, including an extended quarantine period); *United States v. Henriquez*, No. 19-cr-10081-9 (Dkt. 1502) (same).

Giannulli's situation is distinguishable from that of his co-defendant, Toby Macfarlane, who had served approximately 50 percent of his six-month sentence and was scheduled to be released to a halfway house before the COVID-19 pandemic hit and he was quarantined in solitary confinement without access to mail, email, or telephone at a high security facility. *United States v. Macfarlane*, No. 19-cr-10131-NMG, 2020 WL 1866311, at *1 (D. Mass. Apr. 14, 2020). Macfarlane's quarantine was truly unforeseeable, because he reported to prison in January 2020, before the pandemic struck. Giannulli, by contrast, was sentenced in the midst of the pandemic, after BOP had initiated a policy of quarantining new inmates, and could have sought a continuance of his report date.

Likewise, as this Court has found, "generalized and systemic concern regarding the virulent pandemic are insufficient to demonstrate entitlement to early release." *United States v. Reynoso*, No. 17-cr-10350-NMG (Dkt. 77) (D. Mass. Apr. 21, 2020); *see also United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release") (citation omitted). Moreover, because Giannulli already had COVID-19 before reporting to prison, his risk of re-infection or serious disease is low. *See, e.g.*, Ledford, Heidi, "COVID reinfections are unusual—but could still help the virus to spread," *Nature* (Jan. 14, 2021), available at https://www.nature.com/articles/d41586-021-00071-6.[6]   Accordingly, in the absence of

---

[6] Giannulli does not suggest, and the government is not aware, that he suffers from any medical condition that puts him at an increased risk of serious illness for COVID-19.

extraordinary or compelling circumstances, a reduction of Giannulli's sentence would not be consistent with the applicable policy statements issued by the Sentencing Commission. *See* 18 U.S.C. § 3582(c)(1)(A).

## II.     The § 3553(a) Factors Weigh Against Reducing Giannulli's Sentence.

When analyzing whether "extraordinary and compelling circumstances warrant . . . a reduction," the Court must also consider the "factors set forth in section 3553(a) to the extent that they are applicable." *Id.* § 3582(c)(1)(A). The Court recently considered these factors, and determined that a five-month sentence was appropriate. Dkt. 1493 at 20 (imposing five-month sentence "not only as punishment and deterrence for you, but also to dissuade and deter anyone else in your position who thinks that because they have enough money to buy anything they want, they can flout the law and buy their kids' entries into college."). Any reduction in Giannulli's sentence would be widely publicized, thereby undermining the deterrent effect of the sentence this Court imposed. The government respectfully submits that the better course is to allow BOP to assess whether Giannulli is a suitable candidate for home confinement, as it will do in the ordinary course of assessing how to reduce the inmate population during the pandemic.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court deny Giannulli's motion to modify his sentence to home confinement.

<div style="text-align: right;">

Respectfully submitted,

ANDREW E. LELLING
United States Attorney

By: /s/ Kristen A. Kearney
    JUSTIN D. O'CONNELL
    KRISTEN A. KEARNEY
    LESLIE A. WRIGHT
    KARIN M. BELL
    STEPHEN E. FRANK
    Assistant United States Attorneys

</div>

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be served on all registered participants listed in the Notice of Electronic Filing (NEF).

Dated: January 19, 2021                    /s/ Kristen A. Kearney
                                           Kristen A. Kearney